[Civ. No. 1756.   Fourth Appellate District.—May 11, 1936.]

H. A. SESSIONS, Appellant, v. J. E. MEADOWS, as Superintendent of Schools, etc., et al., Respondents.

Clarence H. Wilson for Appellant.

Roger R. Walch, District Attorney, and William F. Hall, Deputy District Attorney, for Respondents.

MARKS, J.—Petitioner sought a writ of mandate to compel respondents to pay to him salary as supervisor of rural schools of Kings County and to reinstate him in such position. Judgments went for respondents and petitioner has appealed.

Petitioner was employed by Elsie I. Bozeman, the then superintendent of schools of Kings County, as supervisor of rural schools of that county for the school year ending June 30, 1935, at a stipulated salary and expense account. The contract bears date of July 1, 1934, but it is admitted it was not executed until the early part of September of that year. Petitioner performed the duties of his employment and received his full compensation up to noon on January 7, 1935.

Mrs. Bozeman had been defeated for reelection by respondent J. E. Meadows, who qualified and took over the office on that day.

Counsel admit that the contract made by Mrs. Bozeman and petitioner was valid and binding on her successor in office. The sole necessary question for our decision is: Was the finding of the trial court that the contract had been mutually abandoned and rescinded by petitioner and Meadows supported by the evidence or reasonable inferences to be drawn from it?

Under date of December 28, 1934, Mr. Sessions addressed the following letter to Meadows:

"Friend Meadows:

"I believe that the last time I talked with you was just before the close of your school at Empire and which I remember as a pleasant occasion. Since then considerable water has passed under the bridge. I had presumed that you would change supervisors, and thought nothing about continuing, and further, I didn't wish in any way to embarrass you, nor to influence your choice. However, since the announcement that Mrs. Bradford will remain on the job, so many teachers and other friends have asked me to be a candidate that I am writing you this letter. By inquiry I find that very few newly elected superintendents are making changes in the staff of supervisors. In a few counties where changes have been made, it seems that preelection arrangements were made. This leaves me few opportunities to secure a new position. Next spring, as the school year closes I believe there will be excellent opportunities. I need a few more months of service to complete my thirty years of teaching necessary to gain the retirement salary, and $200 to put into that fund. I began teaching at seventeen—takes lots of teaching to make thirty years. I need a few more months to get my financial affairs in condition for my retirement should it be necessary. Putting seven children through high school and college has seemed quite a job, and one not through high school yet. I am sending you a few of the commendatory letters I have, and which I should like you to return at your convenience. These are copies—the originals I have. I can refer to Dr. F. W. Thomas and J. W. Canfield of the Fresno State College and others there. To Dr. H. L. Eby, U. C. L. A. To Dr. W. L. Nida, San Diego

State College. To Dr. J. C. DeVoss, and Dr. Geo. E. Freeland, San Jose State College, the entire supervisory staff of Fresno county, and many others, as to my qualifications. I shall be pleased to remain on the job until you find some one you can use. more advantageously, and should be willing to retire gracefully and graciously when that time comes.

"Very truly,
"H. A. SESSIONS."

On January 2, 1935, the following reply was made:

"Mr. H. A. Sessions, Hanford, Calif.

"Dear Mr. Sessions: In reply to your letter of December 28th will say that I had already settled on whom my Rural Supervisors are to be. I want you to know, Mr. Sessions, that I have no personal ill will toward you and hope that you may be able to secure a satisfactory position somewhere. Will hand you your recommendations that you sent me some day when I am in Hanford. Wishing you a Happy and Prosperous New Year, I am,

"Very truly yours,".

According to the testimony of petitioner he had the following conversation with Meadows before leaving the office of the Superintendent of Schools on January 7, 1935: "I went up to Mr. Meadows and I says, 'Well, how about it?' He said, 'Well, I hope you get something else.' Mr. Wilson: Q. And that was all that was said that morning? A. Yes."

Petitioner removed all of his personal belongings from the office of the school superintendent prior to and on January 7, 1935, and performed no services in connection with his employment after that date. On April 9, 1935, he filed a demand for salary and filed a written demand on Meadows to be permitted to complete his contract. He had one conversation with Meadows prior to that time which he summarized as follows: "Q. You never mentioned that contract to Mr. Meadows at any time until you served a written notice on him about April 9th, 1935. Is that correct? A. No, I went to see him some few days previous to that and had a talk with him. Q. Previous to April? A. Yes. Q. And did you discuss the contract with him at that time? A. Well, substantially, yes. I don't remember— Q. Did you have the contract with you, do you recall? A. No, I don't. Q. But you did tell him that you felt you had a contract? A. Yes. Q. Now, on the morning of January 7th, 1935, up to 12

o'clock you said nothing to him about the fact that you considered that you were entitled to remain as Superintendent of Rural Schools? . . . A. No, I didn't make any absolute demand on him at that time. Mr. Sharp: Q. In any form? A. No. Q. This conversation that you spoke of, Mr. Sessions, of having with Mr. Meadows just before you served the written notice on him, on April 9, 1935, do you recall how many days that was before April? It was just two or three days before you served the written notice? A. Well, just a few days.''

In 6 California Jurisprudence, page 382, it is said: ''The rescission of a contract means the annulling or abrogation of it and the placing of the parties to it *in statu quo*. As the Civil Code provides, 'A contract is extinguished by its rescission'. A contract may be rescinded either wholly or in part by the mutual consent of the respective parties, at any stage of their performance, and each of the parties released from any further obligation on account thereof; and such abandonment may be by parol. This is true notwithstanding one of the parties may previously have waived his right to rescind. . . . A rescission by consent may be implied from the acts of the parties. The giving of notice and the conduct of the parties thereafter may amount to rescission by their mutual consent. Moreover, where a rescission on the part of one party is implied by his refusal to comply with the contract, and the other party acquiesces therein, a rescission by consent is effected.''

The question of mutual rescission or abandonment of the contract by petitioner and Meadows was one of fact which was addressed to the trial court. It having been found that the contract was rescinded and abandoned and there being substantial evidence to support such a finding it cannot be disturbed on appeal. Having reached this conclusion it is unnecessary to consider the other questions argued by counsel for petitioner.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A' petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 10, 1936.