[Civ. No. 1527. Fifth Dist. Jan. 4, 1973.]

SERENA PENNEL, Plaintiff and Appellant, v.
POND UNION SCHOOL DISTRICT et al., Defendants and Respondents.

## Counsel

Staniford, Harris & Loomis and John E. Loomis for Plaintiff and Appellant.

Ralph B. Jordan, County Counsel, and Dennis N. Reid, Deputy County Counsel, for Defendants and Respondents.

## Opinion

**FRANSON, J.**—This is an appeal from a judgment of the superior court denying a peremptory writ of mandate to compel reinstatement to a teaching position, and denying payment of salary.

Appellant for 10 consecutive years was a probationary first grade teacher at the Pond Elementary School in respondent district. As a probationary teacher she was rehired each year under a written contract of employment. On May 29, 1969, she signed a contract to teach the fourth grade for the school year commencing September 1, 1969, and ending on June 15, 1970, at a salary of $8,500. At the time of signing the contract, appellant was 64 years of age. Prior to signing, appellant had told Masonheimer, the district superintendent, that she would not teach the fourth grade. Thereafter she wrote Masonheimer a letter stating that she was signing the contract "unwillingly because of pressure, unfairness, force, and coercion by the superintendent."

Due to concern over the possibility that she would not teach the coming year, appellant was asked to attend a board of trustees' meeting on the night of June 3, 1969. Appellant did not attend, and called in just before the meeting to say she could not make it. Appellant did attend an afternoon board meeting held at the school on June 4; in response to a question by the chairman of the school board concerning her intention to teach the fourth grade, appellant answered "Perhaps."

Appellant returned to school in early August and removed some materials from her first grade classroom. When Masonheimer offered to give her the keys to the fourth grade classroom, appellant replied that she would not need them. Appellant appeared to Masonheimer to be in good health at this time.

By letter of August 8, Masonheimer informed appellant that an orientation meeting for the coming school year would be held on August 28, and asked her to advise him if she could not attend the meeting. The letter also contained a notification that school was to commence on Wednesday, September 3. On August 28, appellant called and left word with Masonheimer's secretary that she was ill and could not attend the meeting.

On September 1, Masonheimer called appellant and informed her of a school board inspection of classrooms scheduled for September 2 about 4 p.m. Appellant replied that she was still not feeling well and did not want to come in for the inspection.

On the morning of September 3, Masonheimer called appellant to inform her that it was the first day of school. She replied that she was still ill, and when Masonheimer asked what was wrong, she hung up. Masonheimer testified that her voice sounded normal over the phone. In the afternoon of September 3, Masonheimer wrote appellant a letter in which he stated that "The Board of Trustees has instructed me to fill your classroom with

a permanent replacement since you have vacated this position." Appellant received this letter on September 5.

Appellant testified that she called Masonheimer at his home on September 4, but was unable to reach him; that she asked the party who answered the phone to deliver a message to Masonheimer that she was ill and could not attend school. Masonheimer testified that he never received this message.

A special meeting of the school board was held on the evening of September 4 to discuss appellant's behavior. Appellant received no notice of this meeting. Masonheimer reported to the board that appellant had abandoned her position by not showing up for the first two days of school, and recommended to the board that the vacancy be filled immediately. The board decided that appellant had vacated her position, and Masonheimer was directed to hire a permanent replacement for her. That same evening a permanent replacement was hired.[1]

On the morning of September 5, appellant called Masonheimer and informed him that she was ill. He thereafter advised appellant about the board's action the night before. This call, on September 5, was appellant's first notice that her employment had been terminated. On September 8 she again called Masonheimer and informed him of her illness. Appellant contacted a field representative of the California Teachers' Association, and on September 11, 1969, the school board met with the CTA representative and appellant. The board reaffirmed its decision to terminate appellant's employment on the ground that she had vacated her position.

From late October until the first week in December, appellant came to school almost daily in the morning and reported for work. On October 23, 1969, appellant filed a petition for a writ of mandate to compel reinstatement to her teaching position, but she dismissed the petition on December 8 because the approach of the trial "made me very upset, and I just didn't seem like I could hold out." Appellant stopped coming to school about the time she withdrew her original petition, but resumed coming to school from January until the first part of March 1970. On April 2, 1970, appellant filed the present petition for writ of mandate to compel her reinstatement and payment of back salary. Respondents' answer, filed on April 30, 1970, denied the allegations of the petition and alleged, as an affirmative

---

[1]It should be noted that prior to the special board meeting of September 4, Masonheimer had contacted Mr. Richardson, associate superintendent of schools for respondent district, for administrative advice. Richardson told him that he could not hire two credentialed employees under contract for the same position at the same time; that he (Masonheimer) should hire a *substitute* teacher and seek legal advice from the county counsel.

defense, among others, laches in bringing the action. The action came on for trial on May 27, 1970. On July 21, 1970, findings of fact, conclusions of law and judgment were filed.

The essential findings pertinent to this appeal are: 1. Appellant had abandoned her teaching position by refusing to perform her obligations as a teacher; 2. Appellant was guilty of undue delay in bringing the petition for mandate, which delay resulted in prejudice and injury to respondent.

On the basis of these findings, the court denied a peremptory writ, and denied the claim for back salary.

■■■■ The question presented is whether there is substantial evidence in the record to support the findings of the trial court.[2] We hold there is not. In reaching this conclusion we are mindful of the appellate rule that the evidence must be viewed in a light most favorable to the respondent, and all legitimate and reasonable inferences must be indulged in to uphold the findings, if possible. (*Nestle* v. *City of Santa Monica,* 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480]; *Walling* v. *Kimball,* 17 Cal.2d 364, 373 [110 P.2d 58].)

■ We find no substantial evidence to support the finding that appellant intended to abandon her contract for the school year commencing September 1, 1969. Even though appellant earlier in the year voiced her opposition to teaching the fourth grade, she nevertheless, on May 29, 1969, signed a written contract to teach the fourth grade during the coming school year. Her actions during the summer before the opening of school may have been equivocal as to whether she intended to honor her contract; however, at the time of the orientation meeting for teachers on August 28, as well as when school opened on September 3, appellant claimed illness as a reason for her failure to appear. The assertion of an excuse for nonperformance at the time her performance became due logically precludes any reasonable inference of an intent on the part of appellant to abandon her contract.

■ Although an executory bilateral contract may be rescinded by the mutual consent of the parties (Civ. Code, § 1689, subd. (a); Rest., Contracts, § 406) and such a rescission may be oral or manifested by conduct (*Treadwell* v. *Nickel,* 194 Cal. 243, 259 [228 P. 25]; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 297, pp. 325-326) nevertheless

---

[2]"Substantial" evidence means that the evidence must be of "ponderable legal significance." It must be "reasonable in nature, credible and of solid value." (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689]; *Estate of Teed,* 112 Cal.App.2d 638, 644 [247 P.2d 54]; *People* v. *Bassett,* 69 Cal.2d 122, 138-139 [70 Cal.Rptr. 193, 443 P.2d 777].)

a mutual rescission requires an intent to rescind on the part of both parties. (See *Sessions* v. *Meadows,* 13 Cal.App.2d 748 [57 P.2d 548], upholding a finding that both the teacher and the district mutually intended to abandon the contract.)

As stated in *Sessions* v. *Meadows, supra,* 13 Cal.App.2d at page 751: "A rescission by consent may be implied from the acts of the parties. The giving of notice and the conduct of the parties thereafter may amount to rescission by their mutual consent. Moreover, where a rescission on the part of one party is implied by his refusal to comply with the contract, and the other party acquiesces therein, a rescission by consent is effected." (See also *McCreary* v. *Mercury Lumber Distributors,* 124 Cal.App.2d 477, 486 [268 P.2d 762].)

At no time did appellant expressly repudiate or refuse to comply with her contract, and we are unable to find any substantial evidence from which it can be implied that she intended to rescind the contract. Her statements and conduct at the time her performance was due were to the contrary. To have an implied abandonment the acts and conduct relied on must be positive, unequivocal, and inconsistent with the contract. (*Ross* v. *Tabor,* 53 Cal.App. 605, 615 [200 P. 971].)

Viewing the matter solely as one of contract law, it would appear the trial judge determined that respondent had the right to *unilaterally* rescind the contract by reason of appellant's breach in not showing up to teach on the first two days of school. A party to a contract may rescind if there is a material breach by the other party. (Civ. Code, § 1689, subd. (b)(2).) Under contract principles, the failure to appear at school to teach on the first two days of the school year, absent a legitimate excuse such as illness, well may constitute a material breach justifying a unilateral rescission by the school district, especially in the light of appellant's conduct during the summer months. Unquestionably the opening days of school are important in establishing the teacher-student relationship for the coming year and a slight breach of the contract at the outset may justify termination if it indicates future difficulty in obtaining performance. (*Asso. Lathing etc. Co.* v. *Louis C. Dunn, Inc.,* 135 Cal.App.2d 40, 50 [286 P.2d 825]; Rest., Contracts, § 275, com. a.) However, for the reasons hereinafter stated, we hold that the matter of a school board's unilateral termination of a teacher's contract by reason of the teacher's behavior during the school year is not governed by general contract law but, rather, by the Education Code provisions governing administrative procedures for dismissal of teachers.

Education Code section 13442 provides: "Governing boards of school

.districts shall dismiss probationary employees during the school year *for cause only,* as in the case of permanent employees." (Italics added.)

The "cause" referred to in section 13442 means one of the specific causes for dismissal of a permanent employee listed in Education Code section 13403. This section provides that "unprofessional conduct" and "Persistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed . . . by the State Board of Education or by the governing board of the school district employing him," constitute cause for dismissal. (Ed. Code, § 13403, subds. (a) and (g).)[3]

Education Code section 13442 has been interpreted as giving to probationary teachers during a school year the same procedural protections applicable to dismissal of a permanent employee, such as the right to written notice of the charges and the board's intention to dismiss at the expiration of 30 days unless the employee demands a hearing (Ed. Code, § 13404) and the right to a hearing in a superior court upon timely demand (Ed. Code, § 13412). (See *Horner* v. *Board of Trustees,* 61 Cal.2d 79, 83-84 [37 Cal.Rptr. 185, 389 P.2d 713]; *Lunderville* v. *Emery Unified School Dist.,* 262 Cal.App.2d 459, 463 [68 Cal.Rptr. 768]; *Comstock* v. *Board of Trustees,* 20 Cal.App.2d 731 [67 P.2d 694].)

Respondents failed to follow the required statutory procedure for terminating appellant's employment as a teacher during the 1969-1970 school year. This being so, the board's act of September 4 in declaring appellant's employment terminated was a nullity, and appellant was entitled to teach the fourth grade for the 1969-1970 school year.

Respondents cite *Evard* v. *Board of Education,* 64 Cal.App.2d 745 [149 P.2d 413], for the proposition that a school board may unilaterally declare a teaching position vacated. We do not read *Evard* as so holding. In *Evard* the teacher was denied a leave of absence to join her husband who was about to be ordered overseas. She failed to report for her teaching duties from December 14, 1942, through the remainder of the school year. At the commencement of the next school year she wanted to again teach and contended that the board could not refuse reemployment at that time without prior notice of the termination of her tenure. The reviewing court held that she had forfeited her tenure in the school district when she

---

[3]Appellant's behavior during the summer and up until September 4 would probably have authorized the institution of dismissal procedures against her. Assuming her illness was feigned, her absence without leave well may have constituted unprofessional conduct within the meaning of section 13403, subdivision (a). (See *Board of Education* v. *Mathews,* 149 Cal.App.2d 265, 271 [308 P.2d 449]; *Oakdale Union School Dist.* v. *Seaman,* 28 Cal.App.3d 77 [104 Cal.Rptr. 527]; *Board of Education* v. *Swan,* 41 Cal.2d 546, 551 [261 P.2d 261].)

voluntarily ceased her employment without the consent of the school board. *Evard* can be distinguished as involving a mutual rescission in that by voluntarily abandoning her teaching duties for the second half of the school year the teacher impliedly elected to rescind her contract.[4] (*Sessions* v. *Meadows, supra,* 13 Cal.App.2d 748, 751.)

■ We next hold that the trial court erred in concluding that appellant was barred by laches from maintaining her action for reinstatement. ■ Laches was pleaded by respondents as an affirmative defense, and they had the burden of proving this defense by a preponderance of the evidence. (Evid. Code, §§ 500, 115.) This requires proof of unreasonable delay on the part of appellant in filing the mandamus action, plus either acquiescence in the act about which she complains or prejudice to the employer resulting from the delay. (*Conti* v. *Board of Civil Service Commissioners,* 1 Cal.3d 351, 356-362 [82 Cal.Rptr. 337, 461 P.2d 617]; *Brown* v. *State Personnel Board,* 43 Cal.App.2d 70, 79 [110 P.2d 497].) ■ Inasmuch as appellant contacted the California Teachers' Association representative immediately upon being informed that she had been dismissed and on September 11, 1969, requested a special school board meeting to discuss her firing, hired a lawyer to seek reinstatement, and reported for work for many months, it cannot be said that she acquiesced in her dismissal. Hence we must examine the record for evidence of prejudice to respondents as a result of the delay in filing the petition for reinstatement.

The cases require that the prejudice must result from the employee's delay in seeking reinstatement. (*Conti* v. *Board of Civil Service Commissioners, supra,* 1 Cal.3d 351, 359.) "If because of his delay in seeking his remedy, without offering a satisfactory explanation for the delay, a prejudice results to his adversary, he will be precluded from enforcing his demand. It is not so much a question of the lapse of time as it is to determine whether prejudice has resulted. If the delay has caused no material change *in statu quo,* . . . i.e., no detriment suffered by the party pleading the laches, his plea is in vain." (*Brown* v. *State Personnel Board, supra,* 43 Cal.App.2d 70, 79, cited with approval in *Conti* v. *Board of Civil Service Commissioners, supra,* 1 Cal.3d 351, 359-360.)

■ Any prejudice to respondents in the instant case occurred, not as a result of appellant's delay in seeking reinstatement but, rather, as a consequence of respondents' hiring the permanent replacement teacher on the evening of September 4, even before appellant received notice of her

---

[4]We also note that since the power of the board to terminate its liability under an existing employment contract for the current school year was not involved in *Evard*, the case is not in point.

dismissal. Respondents' liability to pay the replacement teacher's salary for the 1969-1970 school year existed before appellant had an opportunity to seek redress. Prejudice to respondents was caused by their own action, rather than by appellant's delay in seeking reinstatement. (See *La Shells* v. *Hench*, 98 Cal.App. 6 [276 P. 377], where a reinstatement suit brought nine months after discharge was not barred by laches where a new teacher was employed to replace a discharged teacher before notice of discharge was given.)

At oral argument counsel for respondents asserted that there were several teachers hired to replace appellant and if she had proceeded with her original mandamus action, rather than dismissing it in December, she possibly could have been reinstated without respondents' incurring further salary liability to another replacement teacher. We have reviewed the record, and conclude that respondents' assertion is conjectural; the only reference to a second replacement teacher is the testimony of Mason-heimer on cross-examination on May 28, 1970, where he acknowledged that the fourth grade teacher "resigned in the past few days." This resig-nation could not possibly have prejudiced respondent since it occurred during the trial, at which time appellant's claim of right to reinstatement was known and she could have been reinstated to the vacancy. There is no indication that respondents had another vacant teaching position to which appellant could have been reinstated had she proceeded with her earlier suit for reinstatement, nor does the record indicate that the teacher hired to replace appellant acquired the status of a permanent employee (beyond the 1969-1970 school year) during the period of delay in bringing the petition. (Cf. *Kimberlin* v. *L. A. City High School Dist.*, 115 Cal.App. 2d 459 [252 P.2d 344], where a replacement teacher was hired to complete the 1950-1951 school year and prior to the petition for reinstatement the school board entered into a written contract with a replacement teacher to teach the 1951-1952 school year.)

Respondents' argument that the trial court's finding of laches can be sustained on the basis of the disruption of the classroom atmosphere caused by appellant's behavior at the beginning of the school year is likewise without merit, as such disruption was in no way related to appellant's delay in bringing her action.

The judgment is reversed, and the trial court is directed to enter a judgment ordering respondent board to pay to appellant the sum of $8,500, representing her salary for the 1969-1970 school year, plus costs; in addition, respondent is to pay statutory interest on appellant's salary measured from the date each increment was due and payable under her

teaching contract. (Civ. Code, § 3287; *Mass* v. *Board of Education,* 61 Cal.2d 612, 624-627 [39 Cal.Rptr. 739, 394 P.2d 579].)

Brown (G. A.), P. J., and Gargano, J., concurred.