In re **VIENNA INTERNATIONAL CORPORATION dba Jacque's Tabac, Debtor,**

In re **GEMINI INTERNATIONAL CORPORATION, Debtor,**

**Walter LISCHKA, Plaintiff,**

v.

**VIENNA INTERNATIONAL CORPORATION dba Jacque's International Corporation, and Gemini International Corporation, Defendants.**

**Bankruptcy Nos. 81–00489, 81–00499 and 81–0114.**

United States Bankruptcy Court, D. Hawaii.

Jan. 4, 1982.

Scott Nakagawa, Honolulu, Hawaii, for petitioning creditors.

Colin Kurata, Honolulu, Hawaii, trustee.

Dennis W. Potts, Honolulu, Hawaii, for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

The above-entitled action duly came on for final hearing before the undersigned Judge on November 9, 1981. At the hearing Dennis Potts represented Plaintiff, Walter Lischka, Colin Kurata represented himself as Trustee and Scott R. Nakagawa represented the petitioning creditors, Michael and Lillian Taniyama.

Based upon the evidence adduced, the records and memoranda filed herein and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Walter Lischka, hereafter "Plaintiff", is a resident of Honolulu, City and County of Honolulu, State of Hawaii.

2. Defendants Vienna International Corporation dba Jacque's Tabac, hereinafter "Vienna", and Gemini International Corporation, dba Gilbert's International Cigar Company, hereinafter "Gemini", are corporations organized and existing under the laws of the State of Hawaii with their respective principal places of business in the City and County of Honolulu aforesaid. Both Defendants are presently chapter 7 debtors in this Court.

3. On or about May 26, 1977, Defendant Vienna International Corporation was incorporated by Mervyn Gerson, Esq., the attorney for Jacques Bouchard, and on or about the same date Plaintiff subscribed to fifty per cent (50%) of the stock in said corporation in exchange for the capital contributions which he had made to the retail tobacco store which was to be operated by Plaintiff. On the same date, the remaining fifty per cent (50%) of the shares in Vienna were issued to Defendant Gemini as promotional shares.

4. At the first meeting of the Board of Directors of Vienna, Plaintiff was elected to the offices of President and Treasurer, but at a subsequent meeting of said Board held on January 6, 1978, Plaintiff was removed from these offices and made Chairman of the Board and Vice President. At this same meeting, Jacques Bouchard was elected to the offices of President and Treasurer.

5. At the Board of Directors meeting held on January 6, 1978, Plaintiff agreed to pledge his corporate stock to Vienna to be held as security for his satisfaction of the portion of a consolidated loan previously obtained from Amfac Financial Corporation which covered his condominium.

6. As part of Plaintiff's agreement to pledge said stock he executed a document authorizing said stock to be held by Mervyn Gerson, Esq., in escrow, with the understanding that said stock would be turned over to Plaintiff when his portion of said consolidated loan had been paid in full.

7. Plaintiff was never at any time issued a stock certificate by Vienna and the stock certificate which showed Plaintiff's ownership interest was never signed.

8. Plaintiff did not execute a written pledge or security agreement. The terms and conditions of his pledge of said stock were never explained to him and he assumed that he would not have voting rights to said stock as long as it was pledged.

9. A short time after the aforesaid Directors' meeting of January 6, 1978, but prior to the opening of the retail tobacco shop, Jacques Bouchard unilaterally and without Plaintiff's knowledge or approval changed the name of said retail tobacco business and totally excluded Plaintiff from any further participation therein.

10. The retail tobacco shop opened in early March of 1978 and continued operating until September 2, 1980, and during this period Plaintiff did not, in fact, participate therein in any respect.

11. During the period when said retail tobacco store was in operation, Jacques Bouchard was in total and complete control of all aspects of its operation and the corporate affairs of both Defendants herein.

12. After the aforesaid Directors' meeting of January 6, 1978, no further legally noticed or constituted directors or shareholders meetings of Vienna were ever called or held.

13. On July 1, 1980, Plaintiff filed an amended complaint against Gemini and Jacques Bouchard in the Circuit Court of the First Circuit, State of Hawaii, in Civil No. 59679, to recover monies totalling approximately $25,000.00 and other damages from said Defendants.

14. On or about September 2, 1980, a fire occurred on the premises of the retail tobacco store. At this time, Plaintiff was on vacation in Vienna, Austria, and was informed of the fire via a phone call from a friend in Honolulu, but he was not informed of the seriousness of the fire or the extent of damage which it had caused.

15. Trial in Civil No. 59679, First Circuit Court, was held on October 2 and 3, 1980 and an oral ruling was entered in Plaintiff's favor and against Defendants Gemini and Jacques Bouchard, jointly and severally, on October 3, 1980.

16. On or about October 16, 1980, the state court's Findings of Fact and Conclusions of Law were filed in Civil No. 59679. Conclusion of Law No. 4 of the Findings of Fact and Conclusions of Law reads:

The fraudulent breach of said agreement by Defendant Bouchard entitled Plaintiff to a rescission of said agreement and a return to him of his capital contributions in the amount of $24,655.47 plus prejudgment interest thereon at the legal rate commencing December 17, 1977.

17. On or about October 20, 1980, the Judgment in Civil No. 59679 was entered.

Paragraph 2 of the Judgment reads as follows:

Plaintiff is entitled to a rescission of the agreement between Plaintiff and Defendants and a return of his capital contributions in the amount of $24,655.47 plus pre-judgment interest thereon at the legal rate commencing December 17, 1977.

18. No Motion to Reconsider or Set Aside the Judgment entered in favor of Plaintiff in Civil No. 59679 was ever made, no Motion for a New Trial was ever made, and no appeal was taken from said Judgment.

19. On December 23, 1980, a Garnishee Order After Judgment, directed to First Insurance Company of Hawaii, Ltd., was entered in Civil No. 59679. Said Garnishee Order After Judgment has never been complied with.

20. On January 16, 1981, the Judgment entered in Civil No. 59679 was filed with the Bureau of Conveyances of the State of Hawaii.

21. On or about March 13, 1981, Glen Falls Insurance Company, acting on behalf of itself and First Insurance Company of Hawaii, Ltd., filed an interpleader action in the First Circuit Court, State of Hawaii in Civil No. 64839, seeking to determine who was entitled to the proceeds of the aforesaid insurance policy no. F 757 7286.

22. On April 6, 1981, Jacques Bouchard filed for bankruptcy in the above-entitled Court in Bankruptcy No. 81–00177.

23. Petitions for involuntary proceedings in chapter 7 were filed by creditors of Vienna and Gemini on August 19, 1981, and an interim trustee was appointed on September 28, 1981.

24. On August 31, 1981, an Order Granting Motions for Summary Judgment in Civil No. 64839 was filed, granting Plaintiff all monies remaining in said interpleader fund after disbursement to GECC (Amfac) Financial Corp.

25. On September 17, 1981, Plaintiff filed his Complaint Seeking Relief from Stay which is the subject matter of this proceeding.

## CONCLUSIONS OF LAW

1. Plaintiff is entitled to relief from automatic stay as provided in § 362(a) if he can show that the Debtor does not have any equity in the fire insurance proceeds. *See* 11 U.S.C. § 362(d). The lien claimed on the insurance proceeds by Plaintiff is the Garnishee Order entered in the state court in favor of Plaintiff on December 23, 1980. The Judgment in favor of Plaintiff was filed in the Bureau of Conveyance of the State of Hawaii on January 16, 1981.

2. The issue as to whether the Debtor has any equity in the insurance proceeds thus turns on the validity of the December 23, 1980 Garnishee Order pursuant to § 547(b) of the Bankruptcy Code regarding voidable preferences.

3. The Garnishee Order is voidable if the following elements of § 547(b) are present:

(a) The Garnishee Order constituted a transfer of an interest in the insurance proceeds to Plaintiff;

(b) The transfer was on account of an antecedent debt owed to Plaintiff;

(c) The transfer was made while the Debtor was insolvent;

(d) The transfer was made within the one year period prior to the filing of the involuntary petition at a time when Plaintiff had reasonable cause to believe that the Debtor was insolvent;

(e) Plaintiff was an insider; and

(f) The transfer allowed Plaintiff to receive more than his pro rata share of distribution from the estate than if the transfer had not been made.

4. The Court finds that elements (a), (b), (c), (d) and (f) are present in the instant case.

(1) Service of the Garnishee Order on Glen Falls Insurance Co. was an involuntary transfer to Plaintiff within the intent and meaning of Section 101(40) of the Code.

(2) The judgment upon which the Garnishee Order was based, was obtained on account of a loan that Plaintiff had previously made to Vienna.

(3) The transfer was made after the fire had occurred and Vienna had closed its business. In any event, § 547(f) creates a rebuttable presumption of insolvency.

(4) The petitions for involuntary proceedings against Vienna and Gemini were filed on August 19, 1981, thus the transfer having been made on December 23, 1980, was made within one year of the filing of the petitions.

(5) Because the insurance proceeds appear to be the only assets of Vienna and Gemini, the transfer clearly allowed Plaintiff to receive more than his pro rata share of distribution from the estate since there are insufficient funds to permit 100% payment to all general claims.

6. The question before this Court narrows down to the issue of whether or not Plaintiff was an "insider". If the transfer was not made to an insider, the relevant time period would not be one year, but merely 90 days.

7. 11 U.S.C. § 101(25)(B) states in pertinent part:

"Insider" includes, . . . if the debtor is a corporation, (i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor; . . . .

8. 11 U.S.C. § 101(25)(E) states in pertinent part:

"Insider" includes . . . affiliate, or insider of an affiliate as if such affiliate were the debtor.

9. 11 U.S.C. § 101(2)(a) defines the term "affiliate" as follows:

"Affiliate" means entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

10. The term "entity" is defined in Section 101 (14) to include a person.

11. Although Plaintiff was on the books of Gemini as an officer and stockholder of said corporation, the state court found in its Findings of Fact and Conclusions of Law filed on October 16, 1980, that "Plaintiff has at all times since the opening of said retail tobacco shops been totally excluded from in any way participating in its operation."

12. In addition in the Findings of Fact, the state court found that the conduct of Bouchard, who at all times was acting as the alter ego of Gemini in dealing with Plaintiff throughout the cause of the business venture, was fraudulent and of a willful, wanton and malicious nature.

13. The state court found that Bouchard had fraudulently breached his agreement with Plaintiff concerning the business of the tobacco shop. As a result of such fraudulent breach, the state court held in the Judgment filed on October 17, 1980, that the Plaintiff was entitled to a rescission of the agreement between Plaintiff and Defendants Bouchard and Gemini and a return of his capital contribution in the amount of $24,655.47 plus pre-judgment interest commencing December 17, 1977, punitive damages in the sum of $5,000.00 and attorney's fees and costs.

14. *Black's Law Dictionary* (5th ed. 1979) provides the following definition of a contractual rescission:

A 'rescission' amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination ... (A) annulling, abrogation or unmaking of contract and the placing of the parties to it in status quo. *Sessions v. Meadows*, 13 Cal.App.2d 748, 57 P.2d 548, 549.

15. One of the effects of the contractual rescission ordered by the Circuit Court in the Judgment entered in Civil No. 59679, aside from the return to Plaintiff of his money, was the return by Plaintiff to Defendants Jacques Bouchard and/or Gemini of his stock in Vienna.

16. The legal effect of said contractual rescission was thus to terminate Plaintiff's status as a stockholder in Vienna as of October 20, 1980, the date when the Judgment ordering said rescission was entered by the Circuit Court in Civil No. 59679.

17. Because Plaintiff did not have possession or control over the certificate representing his stockholder's interest in Vienna and because said certificate was, in fact, held by the attorney for Jacques Bouchard and Vienna, the Court finds Plaintiff's stock in Vienna to have been returned to Jacques Bouchard and/or Defendant Gemini on October 20, 1980, the date of the aforesaid Judgment.

18. At the time that the Garnishee Order After Judgment was entered on Plaintiff's behalf by the Circuit Court in Civil No. 59679 on December 23, 1980, Plaintiff was not a stockholder in Defendant Vienna. Therefore, the Court concludes that Plaintiff was not an insider at the time of the transfer.

19. The Garnishee Order After Judgment dated December 23, 1980, having been filed outside of the 90-day period prior to the filing of the Petition and since Plaintiff was not an insider of Gemini as of October 20, 1980, one of the elements of 547(b) is not satisfied. Thus, the Garnishee Order After Judgment is not a preferential transfer and is not voidable.

20. Plaintiff's judgment lien in Civil No. 59679 being valid and subsisting, Plaintiff is in the position of a secured creditor as to any assets or monies belonging to Gemini.

21. Under the Garnishee Order After Judgment entered on Plaintiff's behalf in Civil No. 59679 on December 23, 1980, the portion of the proceeds of the aforesaid fire insurance policy sufficient to satisfy his judgment in Civil No. 59679 did as of said date become property belonging to Plaintiff and did not thereafter belong to Gemini.

22. Pursuant to the aforesaid judgment, judgment lien and Garnishee Order After Judgment, Plaintiff is entitled to any and all of the monies remaining in the interpleader fund in Civil No. 64839.

**152**

23. The automatic stay imposed on Civil No. 64839 is hereby lifted and Plaintiff is entitled to immediately collect the monies remaining in said interpleader fund.

24. Let Judgment be entered upon presentation by counsel.