

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SSRE HOLDINGS, LLC,<br><br>           Debtors. | BAP No. CC-21-1027-SGF<br><br>Bk. No. 2:21-bk-10327-WB |
| SSRE HOLDINGS, LLC,<br>          Appellant,<br>v.<br>ZIRKLE GROUP, LLC; PMC FINANCIAL,<br>          Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Julia Wagner Brand, Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and FARIS, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Former chapter 11[1] debtor SSRE Holdings, LLC ("SSRE") appeals from the dismissal of its bankruptcy case. The bankruptcy court found that SSRE's manager, Stanley Wetch, lacked authority to file the bankruptcy petition. The bankruptcy court's decision hinged on its determinations that at the time of the bankruptcy filing: (1) Zirkle Group, LLC held a 50% membership interest in SSRE; (2) Zirkle Group did not consent to the bankruptcy filing; and (3) the consent of all its members was required for SSRE to file bankruptcy. In making these determinations, the bankruptcy court explained that a Rescission Agreement between the parties purporting to unwind Zirkle Group's acquisition of a 50% membership interest in SSRE was legally ineffective. Additionally, the court held that the parties' Members' Agreement did not authorize Wetch as manager to unilaterally file bankruptcy for SSRE. As a result, the court concluded that Zirkle Group remained a member of SSRE whose consent was required to file the bankruptcy.

Upon de novo review, we conclude that the applicable law and record before us do not support either ground for concluding that Wetch lacked authority to unilaterally file bankruptcy for SSRE. Accordingly, we REVERSE.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

## FACTS[2]

### A. SSRE acquires assets from Whittier Financial LLC.

In the summer of 2020, SSRE purchased a food processing plant and related assets (the "Plant") from Whittier Financial LLC. Prior to its acquisition of the Plant, Wetch was the sole member and manager of SSRE. The Operating Agreement for SSRE granted Wetch as manager "full, complete and exclusive authority, powers and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and perform any and all other acts or activities customary or incident to the management of the Company's business, property and affairs." A second subsection confirmed this broad grant of authority to the manager by stating that it was the "intent of the Agreement that no limitations be placed on the powers of the Manager."

As part of SSRE's acquisition of the Plant, it assumed the secured debt that Whittier owed to PMC Financial and took an assignment of the lease of the real property on which the Plant operated and certain equipment leases.

### B. Zirkle Group becomes a member of SSRE.

In furtherance of SSRE's acquisition of the Plant, Wetch negotiated with Zirkle Group, through its principal Derek Zirkle, to transfer a 50% membership interest in SSRE to Zirkle Group (the "Membership Transaction"). The documentation for the Membership Transaction included an Option to Enter

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy court. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233

3

Members' Agreement ("Option"), a Members' Agreement, and an Assignment of Membership Interest in SSRE Holdings, LLC Separate from Certificate. Under the Option, Zirkle Group was supposed to pay $30,000 to Wetch to trigger Wetch's assignment of the membership interest. Ultimately, Zirkle Group paid $30,000 to SSRE ("$30,000 Payment").

The Members' Agreement specified the parties' respective rights and responsibilities in SSRE. Though Wetch and Zirkle Group each held a 50% ownership interest, the Members' Agreement contemplated that Wetch initially would serve as SSRE's manager and chief executive officer. Zirkle would serve as president and secretary. It further specified that Wetch and Zirkle Group would share "joint operational control" and would "collectively make day to day business decisions." Under the Members' Agreement, Alex Meseonzik and Thom Rindt were also to be given management or consulting positions in SSRE, with varying degrees of control.[3]

Additionally, Wetch was supposed to contribute his management expertise and bring in new customers in addition to Whittier's existing customers and those brought into the business by Zirkle Group. Wetch also was responsible for obtaining financing if income from the business was insufficient to cover operating expenses. In turn, Zirkle and Zirkle Group were supposed to contribute their skill and experience related to running a private label food processing business.

---

n.9 (9th Cir. BAP 2003).

[3] Meseonzik is identified as Whittier's owner, from which SSRE purchased the Plant.

In September or October 2020, SSRE commenced operations. Almost immediately, substantial friction developed between Wetch, Zirkle, and Meseonzik. They could not agree on a number of issues regarding SSRE's operations or control thereof. Chaos, business disruptions, and litigation ensued. Some of the focus was on allegations of fraud, misappropriation, and breach of various contractual obligations, but much of it centered on the battle for ownership and control of SSRE.

On October 22, 2020, Wetch, SSRE, and Zirkle Group entered into a "Recission Agreement [sic]" ("Rescission Agreement"). The parties agreed to "render[] [the Membership Transaction] void ab initio and of no force or effect . . . ." SSRE promised to repay to Zirkle Group the $30,000 Payment within thirty days of the Rescission Agreement's execution, and the parties agreed that, "notwithstanding said payment this Recission [sic] Agreement is in full force and effect immediately upon execution hereof by the parties."

The Rescission Agreement did not end the dispute. On November 14, 2020, before SSRE's repayment of the $30,000 Payment was due, Zirkle sent an email purporting to revoke the Rescission Agreement. Further confusing matters, SSRE later sent a check for $30,000 to Zirkle Group but stopped payment on the check before Zirkle Group cashed it.

**C.    SSRE's bankruptcy filing and Zirkle Group's motion to dismiss.**

On January 15, 2021, Wetch filed a bankruptcy petition on behalf of SSRE under subchapter V of chapter 11. Wetch signed the petition on SSRE's behalf as

its manager. According to Wetch, he filed bankruptcy on behalf of SSRE in light of PMC's efforts to foreclose on the Plant and related assets.

Within a week of the bankruptcy filing, Zirkle Group filed a motion to dismiss the case, alleging that Wetch lacked authority to unilaterally file bankruptcy on SSRE's behalf because all membership interests had not voted in favor of the bankruptcy filing. Zirkle Group argued that Wetch's failure to repay the $30,000 Payment negated the Rescission Agreement and that Zirkle Group remained a member of SSRE as of the petition date. It concluded that because not all of the members of SSRE authorized the bankruptcy filing, dismissal of the case was required.

SSRE nonetheless argued that Wetch had sufficient authority under the Operating Agreement as SSRE's manager to file SSRE's bankruptcy petition. It also argued that the Rescission Agreement was effective, and thus Wetch was the only member as of the petition date.

The bankruptcy court heard oral argument on the motion to dismiss.[4] After taking the matter under submission, the court rendered its oral ruling, holding that Zirkle Group was a 50% member of SSRE because the Rescission Agreement was ineffective. The court also ruled that, under SSRE's Operating Agreement, the Members' Agreement, and California law, the filing of a bankruptcy case for

---

[4] The court also heard oral argument on PMC's relief from stay motion, which ultimately was rendered moot by the bankruptcy court's decision to dismiss the case. Nonetheless, PMC joined in Zirkle Group's motion to dismiss and has participated in this appeal as a joint appellee along with Zirkle Group.

an LLC was an action outside the ordinary course of the LLC's business which required the consent of all members.

On February 16, 2021, the bankruptcy court entered its order dismissing SSRE's bankruptcy case. SSRE timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.[5]

## ISSUE

Did the bankruptcy court commit reversible error when it dismissed SSRE's bankruptcy case?

## STANDARDS OF REVIEW

Our decision in this appeal turns on our construction of the Operating Agreement and the Members' Agreement, which we construe in accordance with state law. *See Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985). Because the parties presented no disputed extrinsic evidence regarding the meaning of the operative agreements, the task of interpreting them is a question of law, which we review de novo. *L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989); *see also DVD Copy Control Ass'n,*

---

[5] In their appeal brief, Zirkle Group and PMC posit that this appeal is moot. They point to the fact that, subsequent to dismissal, PMC foreclosed on most of SSRE's assets. The party advocating that an appeal is moot has the burden to demonstrate that the appellate court cannot grant any meaningful relief even if the appellant were to prevail. *Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir. 2007). This matter is not moot as effective relief remains available: the bankruptcy case can be reinstated. Though PMC's post-bankruptcy foreclosure might render it difficult or impossible for SSRE ultimately to accomplish what it originally sought by filing its

*Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 713 (2009) ("Our review of the trial court's interpretation of a contract generally presents a question of law for this court to determine anew."); *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 955-56 (2003) ("When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract.").

Our decision also turns on the enforceability of the Rescission Agreement and whether that agreement was rescinded by Zirkle Group. To answer these questions, we must interpret California law. Our construction of state law also is a matter for de novo review. *See Sec. Pac. Nat'l Bank v. Kirkland (In re Kirkland)*, 915 F.2d 1236, 1238 (9th Cir. 1990); *Steward Fin., LLC v. Bral (In re Bral)*, 622 B.R. 737, 742 (9th Cir. BAP 2020).

When we conduct a de novo review, we consider the matter as if the bankruptcy court did not previously decide it. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

### DISCUSSION

On appeal, SSRE has offered two theories why Wetch had authority by himself to file bankruptcy on its behalf. First, SSRE's Operating Agreement in conjunction with California law regarding limited liability company governance (Cal. Corp. Code §§ 17701.10, 17701.11, 17704.07, 17710.01) enabled Wetch as the sole manager of SSRE to file bankruptcy on its behalf even without the consent of all its members. Second, pursuant to the Rescission Agreement, the parties

---

bankruptcy, the possible failure of any such bankruptcy case does not render this appeal moot.

8

unwound the Membership Transaction, and Wetch was restored to sole ownership of SSRE, thereby terminating Zirkle Group's role in SSRE.

## A. Wetch had authority to file bankruptcy for SSRE under the Operating Agreement.

As duly recognized by the parties and the bankruptcy court, the authorization to file for bankruptcy depends on state law. *Sino Clean Energy, Inc. v. Seiden (In re Sino Clean Energy, Inc.)*, 901 F.3d 1139, 1141 (9th Cir. 2018) (citing *Price v. Gurney*, 324 U.S. 100, 106-07 (1945)). California's Revised Uniform Limited Liability Company Act governing limited liability companies provides that, "[e]xcept as **otherwise provided in this section**," the operating agreement governs, among other matters, the relations of its members and the activities of the limited liability company. Cal. Corp. Code § 17701.10(a) (emphasis added). Cal. Corp. Code § 17704.07(b) and (c), respectively, set forth the default rules for control of member-managed and manager-managed limited liability companies. Regardless of which one applies in this case, the consent of all members is required to take actions on behalf of the company outside the ordinary course of business. *See* Cal. Corp. Code § 17704.07(b)(4), (c)(4).

Members of a limited liability company can, however, adopt a different rule within an operating agreement. Cal. Corp. Code § 17701.10. Limited liability company operating agreements generally are subject to the ordinary rules of contract interpretation. *See Itv Gurney Holding v. Gurney*, 18 Cal. App. 5th 22, 30 (2017). When interpreting a contract, the court principally must rely on the language of the contract but typically also may consider the circumstances under

9

which the contract was made and the subject matter to which it relates. *Am. Alt. Ins. Corp. v. Super. Ct.*, 135 Cal. App. 4th 1239, 1245 (2006).

Sections 4.1 and 4.2 of the Operating Agreement address the authority conferred upon the manager of SSRE. Section 4.1 provides:

> 4.1 <u>Management and Powers</u>. The business, property and affairs of the Company shall be managed by Stanley J. Wetch[ ] (the "Manager"). Accordingly, unless otherwise limited by the Articles or this Agreement, the Manager shall have full, complete and exclusive authority, powers and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and perform any and all other acts or activities customary or incident to the management of the Company's business, property and affairs.

Section 4.2 of the Operating Agreement confirms the broad grant of authority to the manger by declaring that it is "the intent of the Agreement that no limitations be placed on the powers of the Manager."

Here, the parties read the same provisions of the same documents and reach competing conclusions. Zirkle Group argues that the Operating Agreement cannot be read to authorize the manager to file bankruptcy because it does not expressly grant that authority. No case law was cited for this proposition, nor have we found any to support such a requirement. While there is no express grant of authority, the manager is expressly given "full, complete and exclusive" control over all of SSRE's affairs without limitation. This expansive grant of authority necessarily encompasses all matters for which authority can be granted under California law, excluding those for which the Operating Agreement

requires additional member consent. SSRE's Operating Agreement specifically provides that matters concerning dissolution, distributions, and transfers of membership interests required additional consent of SSRE's members.

But in this instance, the Operating Agreement does not specifically require the consent of all members to file bankruptcy. Though such a decision is outside of the ordinary course, under the Operating Agreement it falls within the broad, general grant of authority vested in the manager that specifically was designated to be without limitation. *See generally In re Lexington Hosp. Grp., LLC*, 577 B.R. 676, 686 (Bankr. E.D. Ky. 2017) (construing broad grant of authority under operating agreement to include filing bankruptcy petition); *In re E. End Dev., LLC*, 491 B.R. 633, 635-36 (Bankr. E.D.N.Y. 2013) (same); *but cf. In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 380 (Bankr. D. Or. 2003) (holding that the filing of bankruptcy fell within a non-exclusive category of major decisions that required the consent of all members under LLC's operating agreement). Therefore, the Operating Agreement is not silent as to the manager's authority, and California's statutory default rule concerning decisions outside the ordinary course, Cal. Corp. Code § 17704.07(c)(4)(B), does not apply. In short, sections 4.1 and 4.2 of the Operating Agreement implicitly granted Wetch as manager the authority to file bankruptcy for SSRE.

Wetch and Zirkle Group subsequently executed the Members' Agreement when Wetch transferred 50% of his interest in SRRE to Zirkle Group. The Members' Agreement altered the grant of authority to the manager **as to operational and day-to-day matters**. Under the Members' Agreement, Wetch

11

and Zirkle Group were given joint operational control to make "day to day business decisions." But the Members' Agreement confirmed Wetch as manager and left unaffected the remainder of the manager's authority under the Operating Agreement.

With the exception of some specific carveouts for dissolution, distributions, and transfers of membership interests, the expansive grant of authority set forth in the Operating Agreement is clear and unambiguous and unequivocally applies to all management decisions that could be delegated to the manager under California law — including the ability to file bankruptcy. The Members' Agreement did nothing to alter the manager's broad general control over decisions outside the ordinary course. Instead, it merely carved out an additional exception for joint control of SSRE's day-to-day business decisions.

The bankruptcy court incorrectly viewed the absence of a specific grant of authority to file bankruptcy as determinative. But no specific grant of authority was necessary in light of the broad general grant of authority set forth in the Operating Agreement. We, therefore, hold that Wetch as manager had the unilateral authority to file bankruptcy for SSRE.

**B.** **Wetch was SSRE's sole member at the time of its bankruptcy filing because the Rescission Agreement was a binding contract and Zirkle Group did not rescind it.**

Zirkle Group has not challenged the bankruptcy court's determination that it duly entered into the Rescission Agreement. Rather, it contends that the Rescission Agreement never became effective because Wetch never repaid the

$30,000 Payment. According to Zirkle Group, the bankruptcy court correctly determined that there was a failure of consideration to support the Rescission Agreement such that it never became legally effective.

Zirkle Group and the bankruptcy court elided the crucial distinction between the "rescission" of a contract by mutual agreement of the parties (governed by Cal. Civ. Code § 1689(a)) and "rescission" as a breach of contract remedy invoked unilaterally by one of the contracting parties (governed by Cal. Civ. Code §§ 1689(b) and 1691). *See generally Pennel v. Pond Union Sch. Dist.*, 29 Cal. App. 3d 832, 837-38 (1973) (distinguishing between a bilateral agreement to rescind and the unilateral exercise of a right to rescind). The Rescission Agreement invoked the former kind of rescission: SSRE and Zirkle Group mutually agreed to rescind the Membership Transaction. But Zirkle Group now argues that it was entitled to unilaterally rescind the Rescission Agreement because SSRE failed to repay the $30,000 Payment. We conclude that the Rescission Agreement was an effective mutual agreement to terminate Zirkle Group's membership in SSRE and that any effort by Zirkle Group to unilaterally rescind the Rescission Agreement was ineffective. Therefore, Zirkle Group was not a member of SSRE at the petition date.

1. **The Rescission Agreement was a multilateral contract supported by consideration.**

The Rescission Agreement is straightforward: Zirkle Group agreed to rescind the Membership Transaction pursuant to which it had become a member of SSRE in exchange for SSRE returning the $30,000 Payment within thirty days.

The Rescission Agreement is a classic multilateral contract, where parties make promises that serve as consideration for the other parties' promises. *See Bleecher v. Conte*, 29 Cal. 3d 345, 350 (1981) (citing *Davis v. Jacoby*, 1 Cal. 2d 370, 378 (1934)). Consideration for a contract of rescission typically is supplied by the parties' respective promises to forego rights arising from the rescinded contract. *See, e.g., Jura v. Sunshine Biscuits, Inc.*, 118 Cal. App. 2d 442, 447 (1953) (citing cases); *see also Evans v. Rancho Royale Hotel Co.*, 114 Cal. App. 2d 503, 508 (1952) ("[A] contract can be mutually abandoned by the parties at any stage of their performance and each of the parties released from any further obligation on account thereof . . . ."). This is exactly what happened under the Rescission Agreement.

Zirkle Group makes numerous, and sometimes confusing, references to a failure of consideration without placing its argument within the correct legal context. SSRE, Wetch, and Zirkle Group exchanged valid consideration upon the execution of the Rescission Agreement that immediately created an enforceable contract: all parties agreed to give up their rights under the Membership Transaction; and SSRE promised to return the $30,000 Payment to Zirkle Group. SSRE had thirty days to return the $30,000 Payment, and it did tender a payment within that deadline. But SSRE stopped payment, depriving Zirkle Group of the funds. Thus, SSRE failed to perform its obligation under the Rescission Agreement. But SSRE's promise to make that payment was still sufficient as the initial consideration given to create the Rescission Agreement. SSRE's nonperformance of the contractual obligation simply was a breach of contract.

14

Some of Zirkle Group's arguments assume that that it did not relinquish its membership interest because SSRE never repaid the $30,000 Payment. Such an argument is precluded by the plain language of the Rescission Agreement. The Rescission Agreement specifically stated that the Members' Agreement and other related agreements comprising the Membership Transaction were "void ab initio and of no force or effect . . . ." The Rescission Agreement further stated that it was "in full force and effect immediately upon execution" notwithstanding SSRE's promise to repay the $30,000 Payment within thirty days. The plain and unambiguous language of the Rescission Agreement is clear that Zirkle Group released its interest in SSRE effective immediately upon execution of that agreement, even though the $30,000 Payment had not yet been returned.

The Rescission Agreement was, therefore, a valid, enforceable contract binding SSRE, Wetch, and Zirkle Group. This is significant because under the Rescission Agreement, Zirkle Group immediately released its interest in SSRE. Thus, unless it duly rescinded the Rescission Agreement, it was not a member of SSRE as of the petition date.

2. **SSRE's failure to return the $30,000 Payment to Zirkle Group constituted a failure of consideration for purposes of creating a unilateral right of rescission under California law.**

SSRE does not genuinely dispute that its failure to repay the $30,000 Payment constituted a failure of consideration that would support a right of unilateral rescission under Cal. Civ. Code § 1689(b)(2). Clearly, Zirkle Group did not receive the consideration it was promised in exchange for releasing its

15

interest in SSRE. Instead, SSRE argues that Zirkle Group anticipatorily breached the Rescission Agreement when Zirkle attempted to revoke it in an email sent on November 14, 2020, before the $30,000 Payment was due. Zirkle sent Wetch an email on that date challenging the validity of the Rescission Agreement and stating that he was "revoking" the agreement based on the failure to return the $30,000 Payment. In the same email, Zirkle also wrote that "[t]he agreement is withdrawn and of no effect." SSRE believes that the attempted revocation excused it from making the $30,000 repayment. In this instance, it did not.

SSRE notes that the wrongful repudiation of a contract constitutes an anticipatory breach of that contract by the repudiating party. *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 489 (1996). SSRE construes Zirkle's email as a repudiation of the Rescission Agreement and cites *Central Valley General Hospital v. Smith*, 162 Cal. App. 4th 501, 514 (2008), for the proposition that the repudiation "may discharge the other party's duties to render performance." While this is undoubtedly a true general statement of the law, it is inapplicable here.

As was also recognized by *Central Valley General Hospital*, "an anticipatory breach of contract occurs when the contract is repudiated by the promisor **before the promisor's performance under the contract is due.**" *Id*. (citing *Taylor v. Johnston*, 15 Cal. 3d 130, 137 (1975)) (emphasis added); *see also Diamond v. Univ. of S. Cal.*, 11 Cal. App. 3d 49, 53 (1970) ("[I]t is the general rule, recognized in this state, that the doctrine of breach by anticipatory repudiation does not apply to contracts which are unilateral in their inception or have become so by complete

16

performance by one party.") (*citing Cobb v. Pac. Mut. Life Ins. Co.*, 4 Cal. 2d 565, 573 (1935)). In *Gold Mining & Water Co. v. Swinerton*, 23 Cal. 2d 19, 29 (1943), the California Supreme Court explained: "By its very name an essential element of a true anticipatory breach of a contract is that the repudiation by the promisor occur before his performance is due under the contract."

Zirkle Group's performance was completed upon the execution of the Rescission Agreement; no further action was required to rescind the Membership Transaction or to transfer Zirkle Group's interest in SSRE back to Wetch. The only remaining performance that remained under the Rescission Agreement was SSRE's obligation to repay $30,000 to Zirkle Group. Simply put, Zirkle's statement of revocation did not affect Zirkle Group's performance under the contract and could not "breach" the Rescission Agreement.[6]

Zirkle's "revocation" was of no consequence and did not excuse SSRE's obligation to repay the $30,000 Payment. SSRE's failure to make that payment, therefore, constituted a failure of consideration within the meaning of Cal. Civ. Code § 1689(b)(2). As a result, Zirkle Group had the unilateral right to rescind the Rescission Agreement under Cal. Civ. Code § 1689(b)(2) after Wetch failed to timely perform his contractual obligation.

---

[6] A party desiring to undo the consequences of a binding contract may not simply disavow that contract by declaring it "revoked." *See generally CPI Builders, Inc. v. Impco Techs., Inc.*, 94 Cal. App. 4th 1167, 1173 (2001) (holding that offeree duly accepted offeror's offer to enter into binding arbitration agreement thereby forming a valid and binding contract — offeror's attempted revocation of its offer after offeree's acceptance was ineffective to invalidate the contract).

**3. Zirkle Group failed to comply with the statutory requirements to unilaterally rescind the Rescission Agreement.**

While Cal. Civ. Code § 1689(b)(2) gave Zirkle Group the right to rescind the Rescission Agreement for failure of consideration, it still had to comply with the applicable statutory procedural requirements to effect the rescission. Under Cal. Civ. Code § 1691, Zirkle Group was required to give notice of the rescission and restore everything of value that it had received. The bankruptcy court concluded that Zirkle Group unilaterally had rescinded the Rescission Agreement without making specific findings that Zirkle Group complied with Cal. Civ. Code § 1691. We examine the record to see if it contains evidence to support a finding that Zirkle Group complied with the requirements of Cal. Civ. Code § 1691.

As discussed above, Zirkle Group was not required to physically return anything as part of its performance under the Rescission Agreement. The underlying agreement to unwind Zirkle Group's 50% membership interest in SSRE was self-effectuating, and there was nothing Zirkle Group needed to do in order to release its interest in SSRE. For this reason, no restoration was required by Zirkle Group in order for it to unilaterally rescind the Rescission Agreement. *See Larson v. Warner Bros. Ent. Inc.*, No. 2:04-CV-08400-ODW, 2013 WL 1164434, at *4 (C.D. Cal. Mar. 20, 2013) ("[T]he requirement of a restoration of consideration is unnecessary where, as here, nothing of value was received by the plaintiff."), *judgment entered*, No. 04-CV-08400 ODW RZX, 2013 WL 4101539 (C.D. Cal. June 18, 2013), *and aff'd on other grounds*, 640 F. App'x 630 (9th Cir. 2016).

There is no evidence, however, that Zirkle Group ever effectively exercised its right of rescission under Cal. Civ. Code § 1689(b) because it never gave a notice of rescission as required by Cal. Civ. Code § 1691(a). As the bankruptcy court noted, Zirkle Group had attempted to "revoke" the Rescission Agreement through an email dated November 14, 2020. But as discussed above, the thirty days for SSRE to refund the money had not yet expired when Zirkle sent his email. As of that date, there was no failure of consideration on SSRE's or Wetch's part. Thus, Zirkle Group did not have a right of unilateral rescission under Cal. Civ. Code § 1689(b)(2) when Zirkle sent the email. Under California law, an attempted notice of rescission is ineffective unless the party giving notice actually has a right to rescind. *See Larson*, 2013 WL 1164434, at *5 (citing *Brown v. Roberts*, 121 Cal. App. 654, 659 (1932)). Nothing in the record establishes that Zirkle Group attempted to exercise its unilateral right of rescission after that right arose by giving notice to SSRE and Wetch.

Zirkle Group failed to rescind the Rescission Agreement prior to SSRE's petition date. As a result, it remained a valid, existing contract even though Wetch was in breach of his contractual obligations. *See Whitney Inv. Co. v. Westview Dev. Co.*, 273 Cal. App. 2d 594, 602 (1969) ("A breach does not terminate a contract as a matter of course but is a ground for termination at the option of the injured party"); *see also Alder v. Drudis*, 30 Cal. 2d 372, 381 (1947) (stating that a party injured by a breach of contract may, by election, treat the contract as rescinded). Under the terms of the Rescission Agreement, Zirkle Group was no longer a member of SSRE at the time Wetch filed bankruptcy on SSRE's behalf.

In sum, the Rescission Agreement was duly entered into by the parties and contractually unwound the Membership Transaction. Furthermore, Zirkle Group never exercised its right to unilaterally rescind the Rescission Agreement after that right arose. Consequently, the bankruptcy court erred when it concluded that Zirkle Group remained a member of SSRE at the time SSRE filed bankruptcy.

## CONCLUSION

For the reasons stated above, we REVERSE the bankruptcy court's dismissal of SSRE's bankruptcy case.