Filed 7/25/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| SUNNY GALLO, | B311067 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV00432) |
| v. | |
| WOOD RANCH USA, INC., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County, Rafael A. Ongkeko, Judge.  Affirmed.

Raines Feldman, Beth A. Schroeder and Matthew D. Pate, for Defendant and Appellant.

Bordin Semmer, Joshua D. Bordin-Wosk and Benjamin A. Sampson, for Plaintiff and Respondent.

\*     \*     \*

Perceiving that employees and consumers were being placed in a "procedural limbo" when they were forced to sign arbitration agreements by entities who subsequently refused to pay the necessary fees to allow the arbitrations to move forward, the California Legislature enacted Code of Civil Procedure sections 1281.97, 1281.98 and 1281.99.[1] (Stats. 2019, ch. 870, § 4; Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.) as amended May 20, 2019, p. 2.) These provisions obligate a company or business who drafts an arbitration agreement to pay its share of arbitration fees by no later than 30 days after the date they are due, and specify that the failure to do so constitutes a "material breach of the arbitration agreement" that gives the employee or consumer, in addition to a mandatory award of attorney fees and costs related to the breach as well as other discretionary sanctions, the options of either (1) continuing in arbitration with the company or business paying attorney fees and costs related to the arbitration as a whole or (2) withdrawing from arbitration and resuming the litigation in a judicial forum. (§§ 1281.97, 1281.98, 1281.99.) This appeal presents a question of first impression: Are these provisions preempted by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.)? We hold that they are not because the procedures they prescribe *further*—rather than *frustrate*—the objectives of the FAA to honor the parties' intent to arbitrate and to preserve arbitration as a speedy and effective alternative forum for resolving disputes. We accordingly affirm the trial

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

court's order vacating its earlier order compelling arbitration between the parties in this case.

## FACTS AND PROCEDURAL BACKGROUND

### I.  Facts

In 2015, Wood Ranch USA, Inc. (Wood Ranch) hired Sunny Gallo (plaintiff) to work as a server for its chain of restaurants.

As a condition of her employment with Wood Ranch, plaintiff was required to sign an arbitration agreement and to agree to the terms of the employee handbook.  The agreement provides that "[a]ny controversy, dispute or claim between any employee and [Wood Ranch] . . . shall be settled by binding arbitration."  The agreement also specifies that the arbitrator is to "apply applicable California and/or federal substantive law to determine issues of liability and damages regarding all claims," but is to look to the "California Arbitration Act . . . to conduct the arbitration and any pre-arbitration activities."  The employee handbook reinforces the parties' agreement that they will look to the California Arbitration Act, including its "procedural provisions," "to conduct the arbitration and any pre-arbitration activities."

Plaintiff's employment was terminated in March 2018.

### II.  Procedural Background

#### A.  *Complaint*

In January 2020, plaintiff sued Wood Ranch for compensatory and punitive damages on nine different causes of action.[2]  Without any further details, plaintiff alleged that she

---

[2]    The nine causes of action are (1) discrimination, in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.), (2) failure to prevent discrimination, in violation of FEHA, (3) harassment, in violation

3

suffered discrimination and retaliation on the basis of gender and religion.

### B. *Arbitration is compelled*

In February 2020, Wood Ranch moved to compel arbitration. After briefing and a hearing, the trial court in July 2020 granted the motion and stayed the pending court proceedings.

### C. *Selection of arbitrator, but late payment of fees*

By September 2020, plaintiff and Wood Ranch had agreed which arbitrator to use.[3] The arbitrator was affiliated with the American Arbitration Association (AAA).

On October 20, 2020, AAA sent a letter to counsel for both parties, informing them that plaintiff's "portion of the initial filing fee is $300," that it was due by October 27, 2020, and that "payment should be submitted by credit card or electronic check" using a "secured paylink" that would be "forthcoming with instructions."

---

of FEHA, (4) failure to prevent harassment, in violation of FEHA, (5) retaliation, in violation of FEHA, (6) retaliation, in violation of Labor Code sections 1102.5 and 98.6, (7) failure to engage in the interactive process, (8) wrongful termination in violation of public policy, and (9) intentional infliction of emotional distress.

[3] Wood Ranch suggests that the two months it took for the parties to agree on an arbitrator is akin to *plaintiff* breaching the agreement to arbitrate. On these facts, the case law is to the contrary. (Accord, *Radonjic v. Princess Cruise Lines* (C.D.Cal. Aug. 25, 2021, No. CV-21-2174-DMG) 2021 U.S.Dist. Lexis 206287, *10 ["Radonjic has not cited to any case law that indicates that a litigant's disagreement with the choice of arbitrator is sufficient to constitute an act 'inconsistent with' the right to arbitrate"].)

4

Plaintiff paid the $300 the very same day.

The next day, on October 21, 2020, AAA sent a letter to counsel for both parties, informing them that plaintiff had paid her fees, that Wood Ranch now had to "pay its share of the filing fee in the amount of $1,900," and that the fee was due by November 4, 2020. The letter included this admonition:

> **As this arbitration is subject to California Code of Civil Procedure 1281.97 and 1281.98, payment must be received by December 4, 2020 [that is, 30 days after the November 4 deadline] or the AAA will close the parties' case. <u>The AAA will not grant any extensions to this payment deadline</u>.**

(Boldface and underline in original.) Like the letter requesting payment from plaintiff, this letter also specified that Wood Ranch's payment "should be submitted by credit card or electronic check" and that "[a] secured paylink" would "be forthcoming."

The November 4 due date came and went without any payment from Wood Ranch.

On November 9, 2020, AAA sent a further letter to counsel for both parties reminding Wood Ranch that it had not yet paid and informing Wood Ranch, again in boldface, that "**in accordance with California Code of Civil Procedure 1281.97 and 1281.98, the AAA will close its case on December 4, 2020 if payment is not received.**"

All of these letters were sent to a partner of the law firm representing Wood Ranch, but the partner—for reasons unknown—never forwarded any of this correspondence to the law

5

firm associate handling the case on a day-to-day basis or to the assigned law firm secretary.

The December 4 due date came and went without any payment from Wood Ranch.

Four days after that second due date, the law firm associate representing Wood Ranch contacted AAA about the missed deadline. Two days later—on December 10, 2020—Wood Ranch paid the $1,900 fee.

**D.** *Motion to vacate the order compelling arbitration*

On December 16, 2020, plaintiff filed a motion to vacate the trial court's prior order compelling arbitration. Invoking sections 1281.97 and 1281.99, plaintiff argued that Wood Ranch's late payment of its share of the initiation fees constituted a material breach of the arbitration agreement, and declared plaintiff's election to withdraw from arbitration and pursue her case in court.

After further briefing, and a hearing, the trial court granted the motion. The court rejected both of Wood Ranch's main defenses to the motion. The court ruled that sections 1281.97 and 1281.99 were not preempted by the FAA because those provisions "enforce[], rather than frustrate[], the purpose of the FAA." The court also ruled that Wood Ranch had no viable excuse for its late payment, as there was "no competent evidence of pandemic-related excuses, whether due to a closed restaurant . . . or internal office problems" because the assigned partner at the law firm Wood Ranch retained had been "included on all correspondence."

The court also imposed monetary sanctions of $2,310 reflecting the attorney fees and costs plaintiff incurred as a result

6

of Wood Ranch's breach of the arbitration agreement. The court declined to impose any evidentiary or terminating sanctions.

### E. *Appeal*

Wood Ranch filed this timely appeal.

## DISCUSSION

Wood Ranch argues that the trial court erred in vacating its previous order compelling arbitration because, in its view, the statutes on which the order vacating arbitration is based—sections 1281.97 and 1281.99—are preempted by the FAA. We will review the trial court's order de novo: As a general matter, an order vacating an order compelling arbitration is the functional equivalent of an order denying a petition to compel arbitration in the first place because both divert a case into court rather than arbitration; because the former is reviewed de novo (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9), so should the latter. Further, because the propriety of the order in this case rests on questions of federal preemption as well as the application of undisputed facts to the law, de novo review is particularly appropriate. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10 ["federal preemption presents a pure question of law" warranting "de novo standard of review"]; *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912 ["the application of law to undisputed facts ordinarily presents a legal question that is reviewed de novo"].)

## I. Applicable Law

### A. *The California provisions at issue*

In 1961, the California Legislature enacted the California Arbitration Act (CAA) (§ 1280 et seq.) as a way to protect the right of private parties to resolve their disputes through the "efficient, streamlined procedures" of arbitration. (*AT&T*

7

*Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 344 (*Concepcion*).) The CAA also *defines* what those procedures are, at least in the absence of the parties' mutual decision to adopt different procedures. (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 394 (*Cronus*).)

In 2019, the California Legislature added sections 1281.97 and 1281.99 to the CAA.

Section 1281.97 lays out the procedures by which the initial arbitration-related fees and costs are to be paid by a "company or business" that has "included a predispute arbitration provision in a contract with a consumer or employee." (§§ 1281.97, 1280, subd. (e).)[4] Specifically, once the "employee or consumer meets the filing requirements necessary to initiate an arbitration," the company or business must then pay its share of initiation fees or costs "within 30 days after the due date" set by the arbitration provider.[5] (§ 1281.97, subd. (a)(1) & (2).) Critically, the failure to

_____

[4] Section 1281.98, which was added in 2019 along with its neighboring statutes, prescribes the procedures for the company or business's payment of fees and costs "during the pendency of the arbitration proceeding" (rather than at its initiation). (§ 1281.98, subd. (a)(1).) Its procedures largely parallel those set forth in section 1281.97. (§ 1281.98, subds. (b), (c) & (d).) Because the fees at issue in this case were to initiate the arbitration, we focus our analysis on section 1281.97. But our analysis applies with equal force to the parallel provisions of section 1281.98.

[5] In 2021, our Legislature amended section 1281.97 to expressly obligate the arbitration provider to supply the parties with invoices setting forth the "full amount owed" and the date due, and to set a statutory default due date of "due upon receipt"

8

pay the initiation fees or costs within the 30-day grace period that follows the arbitration provider's due date constitutes a "material breach of the arbitration agreement" that simultaneously qualifies as a "waiv[er] of [the] right to compel arbitration" and a "default of the arbitration," all of which confer upon the consumer or employee the choice of (1) "[w]ithdraw[ing] the claim from arbitration and proceed[ing] in a court of appropriate jurisdiction" or (2) "[c]ompel[ling] arbitration," but requiring the company or business to "pay reasonable attorney's fees and costs related to the arbitration." (§§ 1281.97, subds. (a)(1), (b).) Upon its breach, the company or business is also obligated to pay the "reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach" (§1281.99, subd. (a)), and may also suffer an evidentiary, terminating, or contempt sanction unless it "acted with substantial justification" or "other circumstances make the imposition of the sanction unjust" (§ 1281.99, subd. (b)).

In enacting sections 1281.97 and 1281.99, the California Legislature was aiming to solve a very specific problem—namely, the "procedural limbo and delay" that consumers and employees face when they are "forced to submit to mandatory arbitration to resolve a[] . . . dispute," and the business or company that pushed the case into an arbitral forum then "stalls or obstructs the arbitration proceeding by refusing to pay the required fees." (Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.) as amended May 20, 2019, p. 2; Sen. Bill No. 707 (2019-2020 Reg. Sess.) § 1, subds. (c) & (d).) Section 1281.97 grants deliverance from this procedural purgatory by

_____

unless the parties agree otherwise. (§ 1281.97, subd. (a)(2), added by Stats. 2021, ch. 222, § 2.)

9

deeming late payment to be a material breach of the arbitral agreement that gives the affected employee or consumer the choice of (1) remaining in the arbitral forum on the business's or company's dime or (2) treating the arbitration agreement as being rescinded and returning to a judicial forum, as the Ninth Circuit had previously held to be an appropriate remedy (e.g., *Sink v. Aden Enterprises, Inc.* (9th Cir. 2003) 352 F.3d 1197, 1200, 1201 (*Sink*); *Brown v. Dillard's, Inc.* (9th Cir. 2005) 430 F.3d 1004, 1012 (*Brown*)). (Sen. Bill No. 707 (2019-2020 Reg. Sess.) § 1, subd. (e); Assem. Com. on Judiciary, Analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.) as amended May 20, 2019, p. 8.)

### B. *Federal preemption*

#### 1. *Preemption, generally*

The Supremacy Clause of the United States Constitution declares federal law to be "the supreme law of the land," and thereby empowers Congress to enact statutes that displace—in the vernacular, to preempt—"contrary" state laws. (*People ex rel. Harris v. Pac. Anchor Transp., Inc.* (2014) 59 Cal.4th 772, 777; *Crosby v. National Foreign Trade Council* (2000) 530 U.S. 363, 372 (*Crosby*); U.S. Const., art. VI, cl. 2.)

Federal statutes can preempt state law in several ways.[6]

Congress can *expressly* preempt state law by using "explicit statutory language" to "define . . . the extent to which its enactment[] pre-empt[s] state law." (*English v. General Electric Co.* (1990) 496 U.S. 72, 78-79.)

---

[6] So can federal *regulations* (*Fidelity Federal Sav. & Loan Assn. v. de la Cuesta* (1982) 458 U.S. 141, 153), but no such regulations are at issue in this case.

Congress can also preempt state law *by implication*, and courts have identified three mechanisms for such implied preemption; those mechanisms are known as "conflict preemption," "obstacle preemption," and "field preemption." (*Viva! International Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 936 (*Viva!*).)[7] Conflict preemption occurs when federal and state law conflict to such a degree that it is "impossib[le]" to comply with both. (*Hillsborough County v. Automated Medical Laboratories, Inc.* (1985) 471 U.S. 707, 713 (*Hillsborough County*).) Obstacle preemption occurs when "under the circumstances of [a] particular case, [state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the federal statute. (*Hines v. Davidowitz* (1941) 312 U.S. 52, 67 (*Hines*).) "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." (*Crosby*, *supra*, 530 U.S. at p. 373.) Field preemption occurs when the federal statute at issue is "sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation" and hence intended to occupy the field regulated by the federal statute. (*Hillsborough County*, at p. 713, quoting *Rice v. Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 230.)

Under *all* of these preemption analyses, the "'ultimate touchstone'" is the intent of Congress in enacting the potentially

---

[7] These categories are not "'rigidly distinct'" (*Crosby*, *supra*, 530 U.S. at 372, fn. 6); "conflict preemption and obstacle preemption" are sometimes "group[ed]" "together in a single category." (*Viva!*, at p. 935, fn. 3.)

preemptive federal statute. (*Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470, 485, 494.) When it comes to implied preemption, however, Congress's intent to displace state law must be "'clear and manifest'" except in "areas where there has been a history of federal presence," such as international law or maritime law. (*Arizona v. United States* (2012) 567 U.S. 387, 400 (*Arizona*); *United States v. Locke* (2000) 529 U.S. 89, 108 (*Locke*); *Hines*, *supra*, 312 U.S. at p. 66 [international law]; *Curtin Maritime Corp. v. Pacific Dredge & Construction, LLC* (2022) 76 Cal.App.5th 651, 670 [maritime law].) This "'assumption' of nonpre-emption" reflects deference to the "'historic police powers of the States.'" (*Arizona*, at p. 400; *Locke*, at p.108.)

        2.     *Preemption, under the FAA*

Congress enacted the FAA in 1925 with two overarching goals in mind. First, the FAA was aimed at "overrul[ing] the judiciary's longstanding refusal to enforce agreements to arbitrate." (*Dean Witter Reynolds, Inc. v. Byrd* (1985) 470 U.S. 213, 219-220 (*Byrd*); *Volt Information Sciences, Inc. v. Board of Trustees* (1989) 489 U.S. 468, 474 (*Volt*); *Concepcion, supra*, 563 U.S. at p. 339.) Second, the FAA sets out the default procedural rules that govern how arbitrations and judicial proceedings related to arbitrations are to be conducted in federal court, unless and until the parties to such agreements mutually agree to use different procedures. (9 U.S.C. §§ 3-13, 16 [setting forth various procedural rules]; *Volt*, at pp. 476, 479.)

Congress achieved its first purpose by enacting section 2 of the FAA, which provides in pertinent part that:

        "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of

12

such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ."  (9 U.S.C. § 2.)

In pronouncing that arbitration contracts "involving commerce" are to be "valid" and "enforceable," section 2 of the FAA by its terms invalidates contrary state laws except those that "exist at law or in equity for the revocation of any contract." Thus, section 2 evinces Congress's intent to preempt *some* state laws, whether they be "imposed by statute or judicial rule." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 923-924 (*Sanchez*).)  In trying to fit section 2 into the more general rubric used to apply the preemptive force of federal statutes, the U.S. Supreme Court has declared that section 2 is neither an "express pre-emptive provision" nor an exercise in field preemption.  (*Volt, supra*, 489 U.S. at p. 477.)  Thus, whether the FAA invalidates a particular state law is a function of whether the state law conflicts with or obstructs the FAA's purposes.  (*Rosenthal v. Great Western Financial Securities Corp.* (1996) 14 Cal.4th 394, 408.)

Our analysis of precedent indicates that state laws regulating arbitration conflict with or obstruct the FAA in one of two situations.  Each is discussed separately.

a.    State laws that *single out* arbitration for disfavored treatment

As a general rule, a state law that singles out arbitration contracts for disfavored treatment—and thereby "discriminate[s] on its face" against such contracts—will conflict with the FAA or stand as an obstacle to its objectives (and will therefore be preempted by the FAA). Preemption-inducing disfavor can manifest in two ways.

(i) Arbitration-specific state laws that outright prohibit arbitration

First, the FAA will preempt a state law that singles out one or more types of arbitration agreements in order to "outright" "prohibit[]" their formation or enforcement, thereby creating a direct conflict between the state law declaring such agreements invalid and the FAA declaring them "valid" and "enforceable." (*Concepcion*, *supra*, 563 U.S. at p. 341; *Doctor's Associates v. Casarotto* (1996) 517 U.S. 681, 687 (*Doctor's Associates*) ["courts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions"]; *Kindred Nursing Centers Ltd. Partnership v. Clark* (2017) 137 S.Ct. 1421, 1426 (*Kindred*) ["The FAA . . . preempts any state rule discriminating on its face against arbitration"]; *Epic Systems Corp. v. Lewis* (2018) 138 S.Ct. 1612, 1622 [same]; *Cronus*, *supra*, 35 Cal.4th at p. 385 ["courts may not invalidate arbitration agreements under state law contract principles applicable *only* to arbitration provisions, and that therefore disfavor such contracts, or single them out for 'suspect status'"]; *Blair v. Rent-A-Center, Inc.* (9th Cir. 2019) 928 F.3d 819, 825 [same]; *Southland Corp. v. Keating* (1984) 465 U.S. 1, 16, fn. 10 [FAA "preempts a state law that withdraws the power to enforce arbitration agreements"]; *Kindred*, at p. 1428 [the FAA "cares not only about the 'enforce[ment]' of arbitration agreements, but also about their

14

initial 'valid[ity]'"]).  Thus, the FAA has preempted a state law that invalidated agreements to arbitrate certain franchise disputes (*Southland Corp.*, at pp. 10-16), a state law that invalidated agreements to arbitrate certain wage collection claims (*Perry v. Thomas* (1987) 482 U.S. 483, 490-491), and a state law that invalidated agreements to arbitrate certain Labor Code violations (*Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 950).

(ii)  Arbitration-specific state laws that discourage arbitration

Second, the FAA will preempt a state law that singles out arbitration agreements (or a subset thereof) in order to impose requirements on them that "more subtly" discourage their formation or enforcement.  (*Concepcion*, *supra*, 563 U.S. at pp. 343-344; *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 923-924 (*Sanchez*); *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1145.)  Thus, the FAA has preempted a state law that declared arbitration contracts to be invalid unless they contained a particular form of notice (*Doctor's Assocs.*, *supra*, 517 U.S. at p. 688), a state law that declared arbitration contracts to be invalid if they were signed by a party's representative using a power of attorney (*Kindred*, *supra*, 137 S.Ct. at pp. 1424-1425), and a state law that declared arbitration contracts under a consumer protection statute to be invalid if they contained a waiver of class arbitration (*Sanchez*, at pp. 923-924).  Conversely, the FAA does not preempt a state law that specifically requires arbitration agreements to be *consensual* between the parties, because mutual consent is an essential ingredient of all contracts (e.g., *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 789 ["'An essential element of any contract is "consent" [and] [t]he

15

"consent" must be "mutual.""'"]) and does not discourage parties from entering into arbitration agreements. (*Chamber of Commerce of the United States v. Bonta* (9th Cir. 2021) 13 F.4th 766, 778-781 [so holding, except as to portion of state law that makes it a *crime* to enter into nonconsensual arbitration agreements, which may discourage such agreements].)

(iii) Arbitration-specific state laws that neither outright prohibit nor discourage arbitration

As the above-stated rules imply, a state law will not be preempted by the FAA *merely because* it is arbitration specific.

Of particular relevance here are state laws, like the CAA, that define the standard rules "governing the conduct of arbitration." (*Volt*, *supra*, 489 U.S. at p. 476.) "There is no federal policy favoring arbitration under a certain set of procedural rules" (*ibid.*), so "the FAA leaves room for states to enact some rules affecting arbitration" that the parties may choose to adopt (*Mt. Diablo Medical Center v. Health Net of California* (2002) 101 Cal.App.4th 711, 718 (*Mt. Diablo*)). Those state laws will, by definition, be arbitration specific. If such state laws were preempted merely because they singled out arbitration for differential treatment, states would never be able to enact rules defining the procedures for arbitration unless the procedures mirrored those for every other case handled in a judicial forum (as that would render them no longer "arbitration-specific"), yet requiring such parity would utterly defeat the very purpose of arbitration in the first place—namely, to create an alternative, more "efficient and speedy dispute resolution" mechanism. (*Byrd*, *supra*, 470 U.S. at p. 221.) In the end, declaring the factor of whether a state law "singles out" arbitration to be the sine qua non of preemption would invalidate

16

the CAA and every other state's arbitration laws like it; that is antithetical to the very purpose of the FAA to *encourage* arbitration. (*Volt*, *supra*, 489 U.S. at p. 476; *Mt. Diablo*, at pp. 717-718, 725-726; cf. *Mastrobuono v. Shearson Lehman Hutton* (1995) 514 U.S. 52, 56-63 [where it is unclear whether parties agreed to incorporate a standard rule that would limit one party's rights, courts should construe uncertainty against incorporation].)

Indeed, specific provisions of the CAA have been upheld as not preempted by the FAA, even though those provisions are necessarily arbitration specific.

Section 1281.2, a provision of the CAA that is arbitration-specific, empowers a trial court to stay arbitration or even altogether deny a petition to compel arbitration if one of the parties to the arbitration agreement is "also a party to a pending" judicial action with a third party that involves the same transaction as the nascent arbitration and that could result in a conflicting ruling. (§ 1281.2 [final stand-alone paragraph] & subd. (c).) Yet where the parties to an arbitration agreement have agreed to apply the CAA, applying this state law—even if it results in an arbitration being stayed or denied—does not conflict with or stand as an obstacle to the FAA's goals; to the contrary, this state law *effectuates* one of the FAA's main purposes (as discussed more fully below)—namely, giving effect to the parties' agreement. (*Volt*, *supra*, 489 U.S. at pp. 470, 477-479; *Cronus*, *supra*, 35 Cal.4th at pp. 391-394 [holding that section 1281.2, subd. (c) "does not undermine or frustrate the FAA's substantive policy favoring arbitration" and, thus, is not preempted]; *Mt. Diablo*, *supra*, 101 Cal.App.4th at p. 714 [holding that section 1281.2 is not preempted when the "parties intended to

17

incorporate" the CAA "governing the enforcement of their agreement to arbitrate"].)

Section 1286.2, a provision of the CAA that is arbitration-specific, narrows the scope of judicial review of the merits of an arbitrator's award. Under this provision, a trial court reviewing an arbitration award may not vacate the award due to the "arbitrator's legal or factual error, even an error appearing on the face of the award." (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 8-28 (*Moncharsh*).) Yet where parties to an arbitration agreement have agreed to apply the CAA, applying this state law—even if it means the losing party no longer has the ability to obtain a reversal due to the arbitrator's error—does not conflict with or stand as an obstacle to the FAA's goals; to the contrary, this state law's curtailment of judicial review both gives effect to the parties' agreement as well as furthers another of the FAA's main purposes (as discussed more fully below)—namely, ensuring the "'quick, inexpensive, and conclusive resolution to [a] dispute.'" (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 367, quoting *Moncharsh*, at p. 11; *Siegel v. Prudential Ins. Co.* (1998) 67 Cal.App.4th 1270, 1282-1283 (*Siegel*) ["California's rule precluding on the merits review of an arbitration award does not stand as an obstacle to full effectuation of the purpose of the [FAA]"].)

    b. *Generally applicable* state laws that affect arbitration adversely

Even if a state law does not single out arbitration agreements for outright prohibition or disfavored treatment, it still will be preempted by the FAA if it "stand[s] as an obstacle to the accomplishment of the FAA's objectives"; thus, the fact that a state law is generally applicable does not shield it from

18

preemption. (*Concepcion, supra*, 563 U.S. at p. 343; *Lamps Plus, Inc. v. Varela* (2019) 139 S.Ct. 1407, 1418 (*Lamps Plus*) ["The general applicability of [a state law does] not save it from preemption under the FAA" if the rule "'interferes with fundamental attributes of arbitration.'"].)

In seeking to achieve its overarching goal of squelching judicial hostility toward arbitration, the FAA has as its objective the enforcement of the two "fundamental attributes" of arbitration itself.

The first fundamental attribute of arbitration is its grounding in the mutual consent of the parties, such that the first objective of the FAA is to honor the parties' mutual desire to engage in arbitration. (*Volt, supra*, 489 U.S. at p. 478 [FAA "'was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered,'" quoting *Byrd, supra*, 470 U.S. at p. 220; *Mastrobuono, supra*, 514 U.S. at pp. 53-54 ["central purpose" of the FAA is "to ensure 'that private agreements to arbitrate are enforced according to their terms'"]; *Lamps Plus, supra*, 139 S.Ct. at p. 1415; *Concepcion, supra*, 563 U.S. at p. 344 ["overarching purpose" of the FAA is "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings"].) By seeking to honor the parties' mutual intent, the FAA seeks to put arbitration agreements on "the same footing" as all other contracts. (*Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 275 ["basic purpose" of the FAA is "to put arbitration provisions on '"the same footing"' as a contract's other terms"]; *Scherk v. Alberto-Culver Co.* (1974) 417 U.S. 506, 511 [same]; *Volt*, at p. 478 [FAA "simply requires courts to enforce privately negotiated

19

agreements to arbitrate, like other contracts, in accordance with their terms"].)

The second fundamental attribute of arbitration is its "promise of quicker, more informal, and often cheaper [dispute] resolutions for everyone involved" (*Epic Systems*, *supra*, 138 S.Ct. at p. 1621), such that the second objective of the FAA is to safeguard "arbitration's fundamental attributes of speed and efficiency." (*Sanchez*, *supra*, 61 Cal.4th at pp. 923-924; *Concepcion*, at p. 344; *Byrd*, *supra*, 470 U.S. at 220.) Safeguarding this attribute is why the FAA has been read to preempt state laws mandating class arbitration (absent the parties' clear expression of intent to allow for class arbitration), because the unwieldy nature of class litigation is thought to sacrifice the efficiency and speed at the heart of arbitration. (*Concepcion*, *supra*, 563 U.S. at pp. 339-340; *Lamps Plus*, *supra*, 139 S.Ct. at p. 1416.)

## II.  Analysis

Under the law set forth above, the FAA does not preempt sections 1281.97 and 1281.99.

Sections 1281.97 and 1281.99 undeniably single out arbitration insofar as they define procedures that apply *only* to arbitrated disputes.  But, as noted above, that they are arbitration-specific is not sufficient to warrant preemption by the FAA.  Critically, sections 1281.97 and 1281.99 do not commit the additional—and, as noted above, *necessary for preemption*—sin of outright prohibiting arbitration or more subtly discouraging arbitration.  Instead, sections 1281.97 and 1281.99 define the procedures governing *the date by which* the party who drafted an agreement to arbitrate against an employee or consumer must pay the initial fees and costs to arbitrate, and specify *the*

20

*consequences* of untimely payment.  (§§ 1281.97, 1281.99.)  In this respect, sections 1281.97 (and its attendant sanctions-provision, section 1281.99) are akin to a statute of limitation.  (E.g., *PGA West Residential Assn., Inc. v. Hulven International, Inc.* (2017) 14 Cal.App.5th 156, 176 [noting how a "garden-variety statute of limitations is procedural," but also implements substantive policy]; see cf. *Lehto v. Underground Constr. Co.* (1977) 69 Cal.App.3d 933, 942-945 [section 1288's 100-day limitations period to vacate or correct arbitration preempted by the federal Labor Management Relations Act because that act permits litigation of claims in both federal or state fora, and shorter 100-day period cuts off a worker's rights in one forum but not the other].)  Just as the FAA does not preempt the CAA's procedures for confirming arbitration awards, including its statutes of limitations periods for doing so (*Swissmex-Rapid S.A. de C.V. v. SP Systems, LLC* (2012) 212 Cal.App.4th 539, 544-547), the FAA does not preempt sections 1281.97 and 1281.99.  More broadly, sections 1281.97 and 1281.99 are part of the CAA and thus help to define what it means to arbitrate under the CAA.  In this regard, despite dealing with a different aspect of arbitration, they are functionally indistinguishable from other provisions of the CAA—such as sections 1281.2 and 1281.6, discussed above—that have been repeatedly found *not* to be preempted by the FAA, at least where, as here, the parties have agreed to incorporate the CAA into their agreement to arbitrate.  These sections also do not disfavor arbitration because the consequences of blowing the payment limitations period they erect do not necessarily end the nascent arbitration:  Section 1281.97 gives the employee or consumer the *option* of continuing in arbitration or returning to a judicial forum.  (§ 1281.97, subd. (b).)

21

Nor do sections 1281.97 and 1281.99 stand as an obstacle to the accomplishment of either of the FAA's objectives.

Applying these sections in this case does not interfere with the FAA's first goal of honoring the parties' intent. That is because the parties in this case signed an arbitration agreement that incorporated the "California Arbitration Act . . . to conduct the arbitration and any pre-arbitration activities." To be sure, sections 1281.97 and 1281.99 were not part of the CAA at the time plaintiff agreed to the arbitration policy drafted by Wood Ranch. However, where, as here, the parties to a contract incorporate a law that is to be used at some time in the future (here, at the time the arbitration takes place), the parties are deemed to have contemplated—and hence, consented to—the incorporation of postcontract changes to that law. (*Torrance v. Workers' Comp. Appeals Bd.* (1982) 32 Cal.3d 371, 379 ["'[When] an instrument provides that it shall be enforced according . . . to the terms of a particular . . . statute, the provision must be interpreted as meaning the . . . statute in the form in which it exists at the time of such enforcement.'"]; *United Bank & Trust Co. v. Brown* (1928) 203 Cal. 359, 362-363 [same]; see generally, *Swenson v. File* (1970) 3 Cal.3d 389, 393-395 [when parties do not reference the law to be used at a future time, "[t]he parties are presumed to have had existing law in mind when they executed their agreement"]; *Doe v. Harris* (2013) 57 Cal.4th 64, 70 ["as a general rule, contracts incorporate existing but not subsequent law"].) Further, applying section 1281.97 and 1281.99 is fully consistent with the parties' more general intent to arbitrate because the parties' agreement was to arbitrate the dispute, not let it die on the vine and languish in limbo while the party who

demanded arbitration thereafter stalls it by not paying the necessary costs in a timely fashion.

Applying these sections in this case does not interfere with the FAA's second goal of safeguarding arbitration as an expedited and cost-efficient vehicle for resolving disputes. That is because sections 1281.97 and 1281.99 *facilitate* arbitration by preventing parties from insisting that a dispute be resolved through arbitration and then sabotaging that arbitration by refusing to pay the fees necessary to move forward in arbitration. And although these sections only regulate the payment of fees by the drafters of agreements (rather than the employees or consumers who are required to sign them), this reflects the reality that an employee or consumer would never *want* to stall their own claim in arbitration (by not paying the dues) because doing so would afford them no relief.

As our analysis implies, the FAA does *not* have a third goal of "favoring arbitration under a certain set of procedural rules" because, as explained above, "the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." (*Volt*, *supra*, 489 U.S. at pp. 476, 479.) Here, the parties have expressed their intent to incorporate the CAA—which included sections 1281.97 and 1281.99 by the time Wood Ranch sought to enforce the agreement to arbitrate. Thus, plaintiff's insistence upon employing these provisions as a means of facilitating the arbitration to which the parties agreed in no way frustrates the FAA's goals of honoring the parties' intent or safeguarding arbitration as a means of expediting the resolution of their dispute.

We are not alone in concluding that the FAA does not preempt section 1281.97 or section 1281.99. Although no

23

California appellate court has yet addressed this issue, the federal district courts have uniformly rejected Wood Ranch's precise challenge. (See *Postmates, Inc. v. 10,356 Individuals* (C.D.Cal. Jan. 19, 2021, No. CV-20-2783-PSG) 2021 U.S.Dist. Lexis 28554, *21-*22 [so holding]; *Agerkop v. Sisyphian LLC* (C.D.Cal. Apr. 13, 2021, No. CV-19-10414-CBM) 2021 U.S.Dist. Lexis 93905, *11-*13 [same].)

### III. Wood Ranch's Arguments

Wood Ranch resists our conclusion with several arguments that collapse into four general objections.

First, Wood Ranch argues that sections 1281.97 and section 1281.99 frustrated the arbitral proceedings *in this case* because Wood Ranch's tardiness in paying its initial arbitration fee of $1,900 resulted in the matter being returned to the trial court without any showing that Wood Ranch was to blame for the late payment or that plaintiff was prejudiced by it. To be sure, section 1281.97 declares any payment that exceeds the arbitration provider's deadline *and a statutorily granted 30-day grace period* to be a material breach as a matter of law. (§ 1281.97, subd. (a).) At its core, this section implements the usual rule that a material breach of contract may provide a ground for rescinding the contract (Civ. Code, § 1689, subd. (b)(2); *Pennel v. Pond Union School Dist.* (1973) 29 Cal.App.3d 832, 838) and, if the contract is an agreement to arbitrate, for rescinding that agreement and kicking the case back into a judicial forum (*Sink, supra*, 352 F.3d at p. 1201; *Brown, supra*, 430 F.3d at p. 1010). Where section 1281.97 departs from the usual rule is that it statutorily defines a material breach as a matter of law to be the failure to pay anything less than the full amount due by the expiration of the statutory grace period, rather than leaving

24

materiality as an issue of fact for the trier of fact to determine. (Cf. Civ. Code, § 1511 ["[t]he want of performance" may be "excused" by acts of God or by inducement]; *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1051-1052.) The California Legislature had a good reason for declaring untimely payment a material breach as a matter of law rather than leaving materiality a question of fact in this context: Employees and consumers were facing either the complete denial of any relief or delays in obtaining relief by virtue of the "'perverse incentive'" companies and businesses had to push claims into arbitration and then to refuse to pay the resulting arbitration fees; in such circumstances and to combat those incentives, the Legislature reasoned, *no* breach was immaterial to the stranded employee or consumer. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.) as amended May 20, 2019, p. 8.)

The mere fact that application of section 1281.97 in this case deprives Wood Ranch of the arbitral forum that it initially invoked does not warrant the conclusion that section 1281.97 is preempted by the FAA. As noted above, section 1281.97 is one of several statutes that are part of the CAA, which defines the very procedures by which arbitration is to be conducted under California law. These statutes, by definition, set up different procedures from those governing litigation in the California courts. In any given case (and thus in *every* single case), one of the parties to an arbitration will be able to show that it was harmed by being subject to those arbitration-specific procedures: A party who might have obtained a reversal due to legal or factual error in the trial court will be denied that reversal under the more limited review provisions of section 1286.2, just as Wood

25

Ranch is now arguing that it might not have been found in material breach of the arbitration agreement had it been in court (and not subject to section 1281.97), where it could have advanced its counsel's inattentiveness as a possible excuse for its 36-day-late payment. If that showing were enough to justify preemption under the FAA, then preemption would be found in every case and the CAA would cease to exist. This is contrary to the law, explained above, which has repeatedly rejected FAA preemption challenges to the CAA's provisions defining how arbitration is to proceed. (*Volt*, *supra*, 489 U.S. at pp. 470, 477-479; *Cronus*, *supra*, 35 Cal.4th at pp. 391-394; *Siegel*, *supra*, 67 Cal.App.4th at pp. 1282-1283.) We decline Wood Ranch's invitation to stab this body of precedent in the back.

Second, Wood Ranch argues that section 1281.97 frustrates the FAA's accomplishment of its objectives. Wood Ranch asserts that section 1281.97 frustrates the FAA's objective of honoring the parties' intent because section 1281.97 had the effect of ending the arbitration in this case. However, this assertion ignores that the parties agreed to be bound by the CAA when arbitrating their dispute, that the CAA at the time of arbitration in this case included section 1281.97, that it was Wood Ranch's 36-day-late payment that triggered section 1281.97, and that the parties did *not* agree to let Wood Ranch commit such violations of section 1281.97 with impunity. It appears that what Wood Ranch is really seeking is a right to keep the dispute in arbitration without following the arbitration rules of the CAA that Wood Ranch expressly agreed to. The FAA does not sanction this outcome, for the FAA's goal is put arbitration "on *equal* footing" with other contracts, not to put one of the parties to the arbitration on *better* footing. (*Cronus*, *supra*, 35 Cal.4th at p. 384

["the FAA's purpose is not to provide special status for arbitration agreements, but only 'to make arbitration agreements as enforceable as other contracts, but not more so.'"], quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 394, 404, fn. 12.) Wood Ranch also contends that section 1281.97 is contrary to the FAA's objective of providing for a speedier and more efficient dispute resolution mechanism because Wood Ranch only missed the deadline by a few days. However, this contention ignores that Wood Ranch missed AAA's deadline by 36 days, and more importantly that section 1281.97's procedures putting a business's feet to the fire to pay on time *facilitates* the resolution of disputes with alacrity. Wood Ranch posits that section 1281.97 is "hostile" to arbitration. However, this position ignores our prior conclusion that this statute, when incorporated into an agreement by the parties, honors the parties' intent and results in a faster proceeding; in this situation, section 1281.97 is a friend of arbitration and not its foe.

Third, Wood Ranch argues that we (or the trial court) misread precedent. To begin, Wood Ranch argues that *Volt* (and its analysis rejecting an FAA preemption challenge to an arbitration-specific state law defining how arbitration is to proceed when that law is incorporated into an arbitration agreement) has been "eclipsed" by subsequent cases such as *Concepcion* and *Epic Systems* (and their analysis generally disapproving of arbitration-specific state laws). We disagree. *Concepcion* and *Epic Systems* dealt with state laws that allowed a party to demand classwide arbitration notwithstanding the party's prior waiver of the right to do so (*Concepcion*, *supra*, 563 U.S. at pp. 346-347; *Epic Systems*, *supra*, 138 S.Ct. at p. 1619). Neither case purported to examine a state law defining how the

27

default procedural rules for arbitration was to operate in a particular state. Thus, *Concepcion* and *Epic Systems* had no occasion to address *Volt*'s analysis, let alone overturn it. Next, Wood Ranch argues that the Ninth Circuit's decision in *Sink* was overruled by a subsequent Ninth Circuit case, *Dekker v. Vivint Solar, Inc.* (9th Cir., Oct. 26, 2021, No. 20-16584) 2021 Lexis 32092 (*Dekker*). This argument is both irrelevant and incorrect. It is irrelevant because *Sink* was merely the impetus for our Legislature's enactment of section 1281.97 (Sen. Bill No. 707 (2019-2020 Reg. Sess.) § 1, subds. (e) & (f)), and does not bear on our preemption analysis. It is incorrect because *Dekker* did not purport to overturn *Sink* but instead held that the question of whether a party had breached the agreement by nonpayment was one for the arbitrator, not the court, because the arbitration agreement there delegated issues of "breach, default, or termination" to the arbitrator (*Dekker*, at pp. *3-*4); indeed, *Dekker* could *not* have overruled *Sink* because *Dekker* is an unpublished memorandum disposition (e.g., *Phelps v. Alameida* (9th Cir. 2009) 569 F.3d 1120, 1136; U.S. Cir. Ct. Rules (9th Cir.), rule 36-3(a).) Further, Wood Ranch disputes plaintiff's reading of several federal district court cases. (E.g., *Daniels v. Securitas Sec. Servs. v. United States* (C.D.Cal., May 27, 2021, No. SACV-18-00265-CJC) 2021 U.S.Dist. Lexis 109388; *Hagan v. Park Miller LLC* (N.D.Cal. Apr. 29, 2021, No. 20-CV-06818-CRB) 2021 U.S.Dist. Lexis 84904; *Tapia v. Braiform Enters.* (C.D.Cal., July 17, 2020, No. SACV-19-2434-JVS) 2020 U.S.Dist. Lexis 161652.) Because these cases do not speak to the issue of preemption, how they are read is irrelevant to our preemption analysis. Fourth and finally, Wood Ranch argues that the question of whether it ran afoul of section 1281.97 was a question that

should have been presented to the arbitrator, and not the trial court.  We need not entertain this argument because it was not brought to the trial court's attention until the hearing, and not brought to our attention until the reply brief.  Such tardiness amounts to a forfeiture or waiver.  (*Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1372, fn. 11 [argument raised for first time in reply brief; waived]; *Acosta v. Los Angeles Unified School Dist.* (1995) 31 Cal.App.4th 471, 480 [argument raised for first time at hearing on motion; waived]); cf. *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6 [argument raised for first time at oral argument; waived].)

## DISPOSITION

The order is affirmed.  Plaintiff is entitled to her costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, J.

HOFFSTADT


We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ